DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Defendant, Raymond A. Smith, appeals from his conviction for Aggravated Murder and his death sentence. We affirm.
On or about January 19, 1994, Defendant set out and completed an intricate plan to murder Ronald Lally, a government informant, who was scheduled to testify against the Defendant and his son ("Danny") in their upcoming January 1994 drug trafficking trials.
In June of 1993, Ronald Lally, a crack addict, contacted the Elyria Police Department and volunteered his services to provide information to the police in order to bring down his crack cocaine suppliers, Defendant and Danny. Thereafter, Ronald Lally was wired when he purchased drugs from Defendant and Danny. On August 8, 1993, Defendant was arrested on drug trafficking charges. Danny was arrested for drug trafficking on August 12, 1993. Ronald Lally was scheduled to testify against Defendant and Danny in their January 1994 drug trafficking trials. Around 10 a.m. on January 19, 1994, Detective Michael Beaman was called to a driveway in a Cleveland cemetery where he discovered Ronald Lally's body.
Michael Smith, another son of the Defendant, provided a detailed account of the events which occurred on January 18 and 19, 1994. Michael described his father speaking to Ronald Lally while in Joann Fick's Chrysler LeBaron convertible on route from Lorain County to the cemetery in Cleveland. Michael listened to the Defendant discussing the tape that Ronald Lally made with Defendant on it. Michael also described how Defendant pointed a gun at Ronald Lally's head and then shot him in the head in the driveway of the cemetery. Michael also heard Ronald Lally yell that he was shot in the head. Michael stated that Defendant and Stan Jalowiec attempted to put Ronald Lally's body in the trunk of Joann Fick's LeBaron, but could not get it in. Michael also felt the car run over Ronald Lally several times.
Ronald Lally's death was determined to be caused by a combination of a gunshot to the head, brain damage from being repeatedly beat on the head, and exposure to the cold. The examiner found that Ronald Lally was cut in the neck with a knife and was run over by a vehicle. Investigators discovered that blood containing the DNA of Ronald Lally was found in the trunk of Joann Fick's Chrysler LeBaron convertible. Joann Fick testified that when Raymond Smith and Stan Jalowiec returned her vehicle to her the next morning, she noticed blood in the interior of the car. She also concluded that the exterior had just been washed because it was a sheet of ice.
Defendant was indicted on March 8, 1995, by a Lorain County Grand Jury for Aggravated Murder, R.C. 2903.01(A), with a firearm specification and a death penalty specification. The jury trial commenced on November 28, 1995. On December 5, 1995, Defendant was found guilty of Aggravated Murder, R.C. 2903.01(A), with a firearm specification, R.C. 2941.141, and with an aggravating circumstance specification, R.C. 2941.14. In addition, there was a death penalty specification accompanying the count: that the offense was intended to prevent a witness from testifying during a criminal proceeding (R.C. 2929.04(A)(8)). On January 5, 1996, the trial court sentenced Defendant to death in accordance with the jury's sentencing verdict.
Defendant timely appeals the judgment of the trial court and raises fourteen assignments of error. We have rearranged slightly the assignments to facilitate review.
 ASSIGNMENT OF ERROR I
The trial court violated [Defendant's] due process and equal protection rights under the 14th Amendment of the U.S. Constitution and Article I of the Ohio Constitution and erred to the prejudice of [Defendant] when it granted the state's motion to take the deposition of Michael Smith pursuant to Crim.R. 15(A).
 ASSIGNMENT OF ERROR II
The trial court erred to the prejudice of [Defendant] and in violation of [Defendant's] due process rights when it denied [Defendant's] motion in limine to exclude the deposition of Michael Smith.
Because the first two assignments of error deal with whether the trial court properly allowed for the deposition of Michael to be taken and properly denied Defendant's motion in limine to prevent the deposition of Michael from being admitted into evidence, we address Defendant's first and second assignments of error together.
On June 1, 1995, the prosecution filed a motion to take the deposition of Michael prior to Defendant's trial. The trial court held a hearing on the motion on June 12, 1995. Despite Defendant's objections, the trial court granted the prosecution's motion to take Michael's deposition. The prosecution took Michael's deposition on June 16, 1995. Defendant and his attorney were present at the deposition, and Defendant's attorney cross-examined Michael during the deposition.
In terms of the first assignment of error, Defendant avers that the trial court erred by finding that it was probable that Michael would not be able to attend or would be prevented from attending Defendant's trial. He further contends that the evidence presented at the hearing substantiated that Michael was in a safe place, that the incarcerated defendants (including Defendant) could not pose a physical threat to Michael, and that Michael was willing and able to testify at the trial in this matter. In his second assignment of error, Defendant argues that the prosecution could not prove that it made a reasonable and good faith effort to secure Michael's presence at trial. Defendant further asserts that his Sixth Amendment right to confront witnesses was violated when the trial court permitted Michael's deposition transcript to be admitted into evidence at Defendant's trial.
Trial courts maintain discretion to allow for depositions of witnesses to be taken and used in lieu of a witness testifying at trial pursuant to Crim.R. 15. State v. Koontz (1979), 65 Ohio App.2d 264,269-70. See State v. Hill (1967), 12 Ohio St.2d 88, paragraph one of the syllabus. Crim.R. 15 states:
 (A) When Taken. If it appears probable that a prospective witness will be unable to attend or will be prevented from attending a trial or hearing, and if it further appears that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at anytime after the filing of an indictment, information, or complaint shall upon motion of the defense attorney or the prosecuting attorney and notice to all the parties, order that his testimony be taken by deposition * * *
 (F) Use. At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears: * * * that the party offering the deposition has been unable to procure attendance of the witness by subpoena.
The Twelfth District Court of Appeals found:
 Crim.R. 15(A), which controls the use of depositions in criminal matters, states that the court shall order that the deposition of a prospective witness be taken if (1) it appears probable that the witness will be unable to attend a trial or hearing, and (2) it is necessary to take the witness's deposition "* * * in order to prevent a failure of justice * * *."
State v. Pastor (Dec. 31, 1984), Butler App. No. CA84-05-056, unreported, 1984 Ohio App. LEXIS 12156, *9. Reviewing courts assess a trial court's deposition determination under an abuse of discretion standard. Id. at *10. In a recent case, the Third District Court of Appeals addressed a Defendant who asserted that his right to confrontation was violated because the prosecution failed to make a showing of unavailability of two witnesses. The court noted that "[t]he purpose of the Sixth Amendment right of an accused to confront all witnesses against him is to secure for the defendant the opportunity to cross-examine such witnesses."State v. Bailey (June 3, 1997), Hancock App. No. 5-97-01, unreported, 1997 Ohio App. LEXIS 2791, *2-3. See Ohio v. Roberts
(1980), 448 U.S. 56, 63, 65 L.Ed.2d 597, 606; State v. Keairns
(1984), 9 Ohio St.3d 228, 229. Furthermore, courts have concluded that the Confrontation Clause requires a showing that a witness is unavailable, that a defendant and his attorney are present at the deposition, and that a defendant's attorney cross-examined the witness at the deposition. State v. Bailey, supra, at *2-8. SeeKeairns, supra, at 230. The Sixth District Court of Appeals found that "[t]he trial court did not abuse its discretion by permitting a deposition" where the witness was an eyewitness to a crime, where the witness' testimony was material, where the witness' attendance at trial was uncertain, and where the defense attorney cross-examined the witness at the deposition. State v.Cousino (Oct. 22, 1976), Wood App. No. WD-76-9, unreported, 1976 Ohio App. LEXIS 6885, *3-4. See State v. Hill, 12 Ohio St.2d at paragraph one of the syllabus.
In the case at bar, the prosecution requested that Michael be deposed because Michael asserted that Defendant, his father, threatened to kill him. Ronald Lally, the murder victim, was a former witness who was scheduled to testify against the Defendant and Danny in their drug trafficking trials. Ronald Lally was killed just a few weeks before he was scheduled to testify. This prosecution was for a murder of a primary witness against Defendant in a prior, less serious case. It was not error to allow the deposition of this primary witness who had been threatened.
The trial court also did not err in allowing the deposition to be admitted into evidence because the prosecution showed that it had made a good faith and reasonable effort to secure Michael's presence at Defendant's trial. In addition, Defendant'sSixth Amendment rights were not violated because Defendant's attorney cross-examined Michael at the deposition. This cross-examination was preserved in the transcript of the deposition. Two police officers testified regarding their efforts to secure Michael's presence at Defendant's trial. The state issued a warrant for Michael's arrest when he violated his probation. In addition, the state placed surveillance at his residence where his utilities and rent were still being paid. The police also put a warrant out for Michael Smith's arrest in a national computer system. Police also contacted Michael Smith's ex-wife about twice a week up to the date of Defendant's trial. Michael Smith spoke on the phone from out of state with an investigator for the prosecution on one of the evenings during this multi-day trial. Michael Smith did not provide the investigator with information on his location and gave the impression that he was going to continue to be "in hiding."
Based on the foregoing, we find that the trial court did not err in ordering the deposition of Michael Smith to be taken before Defendant's trial or in allowing the admission of his deposition testimony into evidence at Defendant's trial. Defendant's first and second assignments of error are overruled.
 ASSIGNMENT OF ERROR III
The trial court violated [Defendant's] due process and equal protection rights under the United States and Ohio Constitutions and erred to the prejudice of [Defendant] when it denied [Defendant's] motion to suppress his oral statements without conducting a pre-trial evidentiary hearing.
 ASSIGNMENT OF ERROR IV
The trial court erred to the prejudice of [Defendant] when it denied [Defendant's] motion to suppress his oral statements in violation of [Defendant's] Fifth and Fourteenth Amendment rights.
Defendant argued the following in his suppression motion: (1) on January 11, 1995, the detective failed to give DefendantMiranda warnings prior to questioning Defendant over the telephone, and (2) Defendant's statements made on July 5, 1994, at the police station were not made under the context of Defendant knowingly and voluntarily waiving his rights. Defendant avers that the trial court erred by denying him a hearing on this alleged infraction and by denying his motion to suppress his oral statements. We disagree.
The standard applied to determine if a court properly denied a defendant's motion to suppress evidence without a hearing is whether or not the claims within a defendant's motion contained factual allegations that needed to be assessed by the court. Where the suppression motion does not contain factual allegations justifying relief, a trial court has discretion to deny the motion without a hearing. State v. Holey (Sept. 4, 1987), Ottawa App. No. OT-86-61, unreported, 1987 Ohio App. LEXIS 8574, *4. See Ohiov. Hartley (1988), 51 Ohio App.3d 47, 48; Solon v. Mallion (1983),10 Ohio App.3d 130, 132. The Supreme Court of Ohio has found that "[t]he Fifth Amendment does not bar volunteered statements."State v. Waddy (1992), 63 Ohio St.3d 424, 440, citing Miranda v.Arizona (1966), 384 U.S. 436, 478, 16 L.Ed.2d 694, 726. Furthermore, the Miranda warnings are implicated only in situations where a person "has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. at 444, 16 L.Ed.2d at 706. This Court has held that "[a] reviewing court must examine the totality of the circumstances in which the waiver and statement were made and determine whether the waiver and statement were the result of official coercion or improper inducement." State v.Dennis (May 8, 1996), Summit App. No. 17156, unreported, at 5, citing State v. Slagle (1992), 65 Ohio St.3d 597, 600, certiorari denied (1993), 510 U.S. ___, 126 L.Ed.2d 72.
Defendant was indicted on March 8, 1995, by a Lorain County Grand Jury for Aggravated Murder, R.C. 2903.01(A) with a firearm specification and a death penalty specification. Defendant was read his Miranda warnings, and Defendant signed an acknowledgment of such on July 5, 1994, before answering questions at the police station. The record demonstrates that Defendant knowingly and voluntarily waived his rights. Furthermore, the January 11, 1995, telephone conversation was not an "in custody" situation and thus did not require that Miranda warnings be given. The trial court did not err in denying Defendant's motion to suppress his statements. In addition, the trial court did not err by refusing to grant Defendant a hearing because the factual allegations as presented in Defendant's motion did not entitle Defendant to relief. Defendant's third and fourth assignments of error are overruled.
 ASSIGNMENT OF ERROR V
The trial court erred to the prejudice of the [Defendant] when it permitted out-of-court statements made by Danny Smith to be presented at trial over [Defendant's] objections in violation of [Defendant's] Fourteenth Amendment rights.
Defendant's fifth assignment of error is that the trial court incorrectly admitted, over his objection, alleged hearsay testimony into evidence. Danny's out-of-court statements alluded to the following: (1) Danny seeking revenge against Ronald Lally, (2) Danny looking sick the morning after the incident, and (3) Danny admitting that he and Defendant took care of someone who ratted on them. Assuming, arguendo, that such statements constituted hearsay, we find that the trial court's admission of this testimony did not rise to the level of reversible error.
The Supreme Court of Ohio has held that an error such as allowing hearsay statements to be heard by a jury may be harmless in light of the entire evidence adduced against a defendant.State v. Carter (1995), 72 Ohio St.3d 545, 550. An "[e]rror in the admission of evidence is harmless if there is no reasonable possibility that the evidence may have contributed to the accused's conviction." State v. Rahman (1986), 23 Ohio St.3d 146,151, quoting State v. Bayless (1976), 48 Ohio St.2d 73, 106, vacated in part on other grounds (1978), 438 U.S. 911,57 L.Ed.2d 1155. Moreover, reversal would be appropriate only if a defendant was materially prejudiced by that error. See State v. Joseph
(1995), 73 Ohio St.3d 450, 457. The Supreme Court of Ohio has held that "capital defendants are not entitled to special treatment regarding evidentiary or procedural rules." State v.Greer (1988), 39 Ohio St.3d 236, 244. This Court has held:
 "A trial court enjoys a broad discretion in admitting evidence. This court will not reject an exercise of this discretion unless it clearly has been abused and the criminal defendant thereby has msuffered material prejudice." State v. Long (1978), 53 Ohio St.2d 91, 98. There is no material prejudice if the error is harmless in that the remaining evidence standing alone constitutes proof beyond a reasonable doubt of defendant's guilt. State v. Williams
(1983), 6 Ohio St.3d 281, 290, certiorari denied (1983), 464 U.S. 1020; Crim.R. 52(A).
State v. Johnson (Nov. 4, 1992), Summit App. No. 15065, unreported, at 20-21, reversed and remanded on other grounds,71 Ohio St.3d 332.
Overwhelming evidence of Defendant's guilt was found in the following: Michael's deposition which detailed the brutal murder of Ronald Lally; the coroner's report describing that Ronald Lally died from a shot to the head, repeated beatings to the head, and exposure to the cold; examiners determining that Ronald Lally's throat was sliced with a knife and that he was run over by a car several times; DNA results that showed that Ronald Lally's blood was found in the trunk of Joann Fick's Chrysler LeBaron; and the testimony of other witnesses. This evidence against Defendant was substantial enough to make the alleged hearsay errors harmless. Thus, we find that the trial court did not commit reversible error by allowing the statements into the trial record. Defendant's fifth assignment of error is overruled.
 ASSIGNMENT OF ERROR VI
The evidence presented by the State of Ohio in its case in chief was insufficient as a matter of law and pursuant to Rule 29 of the Ohio Criminal Rules of Procedure the trial court erred and violated [Defendant's] Fourteenth Amendment rights by not dismissing the charges against [Defendant].
Defendant argues that there was insufficient evidence to support his conviction. Based on a review of the evidence presented at trial, we disagree. Defendant avers that the Lorain County Court of Common Pleas lacked venue over this case because none of the elements of the crime occurred in Lorain County. Defendant also argues that the prosecution failed to prove beyond a reasonable doubt the element of "did purposely, and with prior calculation and design."
The test for "insufficient evidence" calls upon a court to view the evidence in a light most favorable to the prosecution, and ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. SeeState v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus; Jackson v. Virginia (1979), 443 U.S. 307, 319,61 L.Ed.2d 560, 573. See, also, State v. Thompkins (1997), 78 Ohio St.3d 380,386. "When an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all of the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof." State v.Beuke (1988), 38 Ohio St.3d 29, paragraph one of the syllabus. See R.C. 2901.12(A). R.C. 2903.01(A) provides that "[n]o person shall purposely, and with prior calculation and design, cause the death of another."
Michael Smith's deposition placed Defendant in a vehicle in Lorain County, holding Ronald Lally, the victim, at gunpoint, and telling Ronald Lally not to make any stupid moves. Michael said that after Defendant was holding Ronald at gunpoint, the vehicle stopped at a Speedway for gas on Route 254 and then proceeded to Route 2 and headed for Cleveland. Defendant evidenced his prior calculation in Lorain County and started to threaten the victim in Lorain County. In addition, Michael provided the following testimony:
Q: And then what happened?
 A: We drove, and my father Raymond Smith brandished a pistol on Ron Lally and told him, "Don't make no stupid moves," and Ron said he wasn't. So at that point we went to Speedway, where we got some gas, and then we got on the highway.
Q: Whose car was Stanley Jalowiec driving?
A: Queen Bee's car.
Q: And what kind of car is that?
A: It's a blue drop top LeBaron.
Q: Do you know Queen Bee's real name?
A: No, I don't.
Q: And did you tell already where everyone was seated?
 A: Yeah. I was — Stan Jalowiec was driving, my father Raymond Smith was in the passenger seat, deceased Ron Lally was on the — in the back seat behind the passenger, and I was in the back seat behind the driver.
Q: So you said you got gas at the Speedway?
A: Correct.
Q: Which one is that?
A: On 254, North Ridge.
Q: And then you were going where?
 A: We got on Rte. 2 and were going — was going to Cleveland.
 Q: And was there any conversation then between your father and Ron Lally?
 A: My father asked Ron Lally did he set my brother up.
Q: And your brother being?
A: Danny Smith.
Q: And what does that mean?
 A: Did he set him up for some drug buys, was he wired.
Q: And did Ron admit to this at first?
A: At first, no, he didn't admit to it.
Q: What did he say?
 A: He said no, it wasn't him. It wasn't him. He kept saying it wasn't him.
Q: Did your father accept that explanation?
A: No.
Q: What happened?
 A: At that point — at that point, my father told him about the tape that we had heard and we knew it was him. And, after a couple minutes, Ron admitted to being the one that set him up. And so —
 Q: Did your father say where this tape came from or anybody in the car say where this tape came from?
 A: No, not that I can remember. At this point, Ron was asked, you know, where did he want to go. We were going to give him — he was going to get some money and get on a Greyhound bus and leave town and not come back.
Q: Did he agree to do that?
A: Yes, he did.
Q: And what happened after that?
 A: Everything was a lot smoother. It was — you know, everybody was okay. At that point, everybody was getting high. We was all getting high in the car. We was all smoking crack cocaine, and then we — as we went to Cleveland. At that point we were going to go up into East Cleveland, Ohio to get some more. We were going to get — Ron was told he was getting ready to get some more to take with him on his trip. But, when we got up in East Cleveland on Euclid, there was something going on. There was police and fire trucks and stuff out there, so we didn't go there. We rode around Cleveland for about another 45 minutes, and then we went back towards downtown. We wound up on Woodland at the Woodland Cemetery. And, at this point, Stan stopped the car in the cemetery. My father got out and he made Ron get out.
Q: How did he make Ron get out?
A: He pointed the gun at him and told him to get out.
Q: What part of Ron did he point the gun at?
A: To his face.
Q: Did Ron get out?
A: Yeah, he got out.
Q: Then what happened?
 A: And then there was some words exchanged, and I couldn't really hear exactly what was being said, and then I heard a gunshot.
Q: Did you hear anything else?
 A: I heard — I heard Ron say out loud that, "Oh, you shot me in the head. You shot me in the head." And, at that point, my father had told us to get out the car. And Stan got out the car and he helped my father beat him. And they said something about the gun being jammed.
Q: Who said that?
 A: My father did. And so he asked — asked Stan did he have a knife, and Stan said no, but there's some on this key chain. And so he came back to the car and got the keys. And, at that point, after the beating and whatnot, there was nothing else to be heard.
 Q: Can you describe this beating? Could you hear it?
 A: Yeah, you could hear the thumps and the smacks and the stomps. It was —
Q: What was Ron Lally doing during this?
 A: He was, you know, talking about, "I won't tell nobody. Don't kill me. Please don't kill me." And those were the last words you would hear.
Q: Then what happened?
 A: Everybody got back in the — well, they tried to put him in the trunk, but he wouldn't fit. At this point they got back in the car.
Q: Who tried to put him in the trunk?
 A: My father Raymond and Stan. And at this point everybody got back in the car, and Stan backed the car up over Ron two or three times.
Q: How did he do that?
 A: He put the car in reverse and just kept backing it up, putting it in reverse, putting it in drive, putting it in reverse, putting it in drive.
 Q: Did Ron Lally's body stop the movement of the car?
A: Yes, it did.
Based on the above testimony, testimony of other witnesses at trial, the examiner's findings of Ronald Lally's cause of death, and the DNA results showing Ron Lally's blood in the trunk of Joann Fick's Chrysler LeBaron, we find sufficient evidence to support Defendant's conviction for Aggravated Murder. Defendant's sixth assignment of error is overruled.
 ASSIGNMENT OF ERROR VII
The verdict is against the manifest weight of the evidence.
Defendant argues that the verdict that he is guilty of Aggravated Murder is against the manifest weight of evidence. He also avers that all the witnesses who testified against him admitted to be being intoxicated on drugs or alcohol on the evening in question.
Ohio courts have maintained:
 In determining whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
State v. Otten (1986), 33 Ohio App.3d 339, 340; State v. Martin
(1983), 20 Ohio App.3d 172, 175.
Upon a review of the evidence, we find that all of the following support Defendant's conviction: (1) Michael's eyewitness account of Defendant (a) pointing a gun at Ronald Lally as they traveled in a vehicle to a cemetery in Cleveland, (b) questioning Ron Lally about the tape he made which incriminated Defendant in a drug trafficking crime, (c) shooting Ron Lally in the head, (d) beating Lally in the head, and (e) trying to get Ron Lally's body into the trunk of the car; (2) the testimony of other witnesses; (3) the determinations that the cause of Ronald Lally's death was due to a gunshot wound in the head, many beatings to the head, and exposure to the cold; (4) the determinations that Ronald Lally's throat had been slit with a knife and that his body had been run over several times by a car; and (5) the DNA results which evidenced Ron Lally's blood being found in the trunk of Joann Fick's Chrysler LeBaron convertible. Thus, despite most of the witnesses admitting to consuming alcohol and, or drugs on the night in question, the jury did not lose its way in finding Defendant guilty of Aggravated Murder. Defendant's seventh assignment of error is overruled.
 ASSIGNMENT OF ERROR VIII
The prosecutor exercised two peremptory challenges in a racially discriminatory manner in violation of [Defendant's] rights under the United States Constitution's Equal Protection clause.
Defendant argues that two of the prosecution's peremptory challenges violated the Equal Protection Clause of the Constitution because the prosecution excluded two jurors solely because of their race. The prosecution excluded Ms. Armstrong and Mr. Broad, the only two African-American prospective jurors.
This Court has held that an appellate court will grant great deference to a trial court and will only disturb the finding of a trial court that the prosecution's peremptory challenges were not made with a racially discriminatory intent if the finding is clearly erroneous. State v. McElrath (1996), 114 Ohio App.3d 516,522. See Hernandez v. New York (1991), 500 U.S. 352, 364-65,114 L.Ed.2d 395, 409. We also have described the three-part test used in Batson v. Kentucky to determine whether a prosecutor violated the Ohio and the United States Constitutions by making a peremptory challenge solely on the basis of race. See Batson v.Kentucky (1986), 476 U.S. 79, 90 L.Ed.2d 69. Specifically, this Court acknowledged:
 In analyzing the merits of a Batson
challenge, a court follows the three-part test. "First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination." (Citations omitted.) Hernandez v. New York
(1991), 500 U.S. 352, 358-59, 114 L.Ed.2d 395, 405.
* * *
 The race-neutral explanation offered by the state need not rise to the level of a challenge for cause. It need not be compelling, nor need it be "persuasive, or even plausible. `At this * * * step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.'" Purkett v. Elem
(1995), 514 U.S. 765, 766, 131 L.Ed.2d 834, 839, quoting Hernandez v. New York, 500 U.S. at 360, 114 L.Ed.2d at 406.
State v. McElrath, 114 Ohio App.3d at 520-21.
The prosecution came forward with neutral reasons why it excluded Mr. Broad and Ms. Armstrong. Mr. Broad had a criminal record and had a relative who was involved in a controversy in another murder trial. Ms. Armstrong's jury questionnaire and voir dire demonstrated that she might have a problem imposing the death penalty because of her strong religious beliefs. Ms. Armstrong commented that only God could take someone's life. These facts demonstrate that these witnesses may be biased against the prosecution. Thus, we find that the prosecution did not violate the Equal Protection Clause by excluding Mr. Broad and Ms. Armstrong. Defendant's eighth assignment of error is overruled.
 ASSIGNMENT OF ERROR X
During closing argument of the penalty phase, the prosecutor improperly commented on the nature and circumstances as aggravating factors in violation of O.R.C. 2929.04 and upon [Defendant's] unsworn testimony in violation of [Defendant's] Due Process and Equal Protection rights.
Defendant argues that the prosecution in the sentencing phase improperly commented on the nature and circumstances as aggravating factors in violation of R.C. 2929.04. Defendant avers that the prosecutor improperly presented the nature and circumstances of the alleged crimes as aggravating circumstances. Defendant also argues that the prosecution improperly commented on his unsworn testimony by pointing out that the prosecution was not provided the opportunity to cross-examine the Defendant. We disagree.
Because Defendant did not object to the alleged misconduct at trial, we only need to take notice of plain error. Crim.R. 52(B). Nonetheless, because Defendant has raised his counsel's failure to raise the objection in his ineffective assistance of counsel claim, which is discussed below, we will address the merits of his misconduct claim.
The Ohio Supreme Court has noted that a prosecutor may remind a jury that Defendant's statement was not made under oath in contrast to the testimony of all other witnesses. State v.Lorraine (1993), 66 Ohio St.3d 414, 419, quoting State v. DePew
(1988), 38 Ohio St.3d 275, 285. Although the Ohio Supreme Court has recognized that even in the context of prosecutors going beyond the limits when their comments refer "not only to credibility but also to [Defendant's] silence on particular issues and to the lack of cross-examination," it can still find that such misconduct is harmless beyond a reasonable doubt. Id. In a case where a defendant alleged that the prosecutor committed misconduct during the closing argument of the penalty phase of the trial, the Ohio Supreme Court held that "the conduct of a prosecutor during trial `cannot be made a ground of error unless the conduct deprives defendant of a fair trial.'" State v. Hawkins
(1993), 66 Ohio St.3d 339, 348, quoting State v. Apanovitch
(1987), 33 Ohio St.3d 19, 24.
The Ohio Supreme Court has held that "[i]t is improper for prosecutors in the penalty stage of a capital case to make any comment before a jury that the nature and circumstances of the offense are `aggravating circumstances.'" State v. Wogenstahl
(1996), 75 Ohio St.3d 344, paragraph two of the syllabus. The Supreme Court has acknowledged the following regarding the comments made by a prosecutor during closing arguments in the sentencing phase of a death penalty trial:
 Under R.C. 2929.04(B), the jury must consider, and the prosecutor may legitimately comment upon, whether the nature and circumstances of the offense are mitigating. See State v. Stumpf
(1987), 32 Ohio St.3d 95, paragraph one of the syllabus. Comments about the heinous nature of the crime can be considered fair comment.
State v. Grant (1993), 67 Ohio St.3d 465, 482. The nature and circumstance of the offense may have mitigating value, and they may not. Because there may be a lack of mitigating value, it is entirely proper for a prosecutor to argue that the nature and circumstances of the offense demonstrate a lack of mitigating value. State v. McNeill (Apr. 1, 1997), Lorain App. No. 95CA006158, unreported, at 29. See State v. Wogenstahl,75 Ohio St. 3d at 354-55.
We find that the prosecutor's comments regarding the nature and circumstances of the offense were made in the context of showing a lack of mitigating value. We also find that the prosecutor's comment that it did not have an opportunity to cross-examine Defendant was harmless beyond a reasonable doubt in light of the evidence of the aggravating circumstance that Ronald Lally was a witness who was scheduled to testify against Defendant in an upcoming drug trafficking trial and in light of the admission and consideration of Defendant's mitigating factors. Defendant's tenth assignment of error is overruled.
 ASSIGNMENT OF ERROR XI
The trial court may not instruct the jury that their decision in the penalty phase is a recommendation. This instruction is a violation of the Eighth and Fourteenth Amendments of the United States Constitution and Article I, Sections 9, 10 and16 of the Ohio Constitution.
Defendant argues that the jurors were led to believe that the responsibility for determining the appropriateness of Defendant's death sentence rested elsewhere because the trial court instructed them that they were making a "recommendation." Defendant contends that the trial court, throughout both phases of trial, consistently referred to the sentencing decision of the jury as being a recommendation. Defendant asserts that the consistent use of the term "recommendation" acted to deprive the Defendant of his constitutionally-guaranteed right to fair and impartial jury deliberations on the issue of sentencing.
Because Defendant did not object to the alleged misconduct at trial, we only need to take notice of plain error. Crim.R. 52(B). Nonetheless, because Defendant has raised his counsel's failure to raise the objection in his ineffective assistance of counsel claim, which is discussed below, we will address the merits of his misconduct claim.
The Supreme Court of Ohio has held that "[b]y the mere use of the term recommendation to refer to the jury's decision, the trial court did not misstate applicable law, diminish the jury's sense of responsibility or commit prejudicial error." State v. Slagle,65 Ohio St.3d at 612. See State v. Grant, 67 Ohio St.3d at 472;State v. Johnson (1989), 46 Ohio St.3d 96, 105.
The trial court in the case at bar did utilize the word "recommendation" when instructing the jury in the penalty phase. The trial court also told the jury that this word should not diminish the amount of responsibility the jury was undertaking in signing such a sentence. It is preferable that trial courts refrain from telling juries that their decisions are recommendations. However, we find that the conduct in the case at bar did not rise to the level of denying the Defendant a fair trial. Defendant's eleventh assignment of error is overruled.
 ASSIGNMENT OF ERROR IX
[Defendant's] right to effective assistance of counsel as guaranteed by the 6th Amendment to the U.S. Constitution and Article I, Section 10 of the Ohio Constitution was violated.
Defendant argues that he was denied effective assistance of counsel because his counsel failed to object to conduct by the prosecution and by the court during the sentencing phase of this trial. During the mitigation phase, the prosecutor and the court allegedly made prejudicial statements. The prosecutor allegedly commented beyond the permissible limits with regard to the nature and evidence of the crime by allegedly telling the jury that the surrounding circumstances were aggravating circumstances. In addition, the prosecutor allegedly commented on Defendant's unsworn statements. Defendant further suggests that the trial court instructed the jury that their decision was merely a "recommendation." Defendant's counsel failed to object to the trial court's instruction. Defendant contends that this instruction permitted the jury to believe that its decision had a diminished value because the power of the ultimate decision was reserved for the trial judge. The issues as to whether the prosecutor's behavior and trial court's conduct were improper in this trial is discussed in the previous two assignments of error. We will focus our discussion here to whether these alleged errors resulted in Defendant being denied effective assistance of counsel.
In order to sustain a claim of ineffective assistance of counsel, a defendant must establish that his attorney's performance fell below an objective standard of reasonable representation and that he was prejudiced by the deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph two of the syllabus. A defendant is prejudiced by his attorney's representation if it can be said that, but for the attorney's errors, the result of the trial would have been different. Id. at paragraph three of the syllabus.
Defendant has failed to demonstrate that he was prejudiced by the court's conduct or the prosecutor's performance even assuming,arguendo, that their actions were deficient. In view of the evidence demonstrating that Ronald Lally was a government informant who was scheduled to testify against Defendant and the entry into evidence during the sentencing phase of mitigating factors, this Court cannot say that the sentencing verdict would have been different if the jury had not heard the prosecutor's comments or the trial judge's instruction. Defendant's ninth assignment of error is overruled.
 ASSIGNMENT OF ERROR XII
The trial court erred to the prejudice of [Defendant] and in violation of [Defendant's] Due Process and Equal Protection rights when it failed to comply with the requirements of O.R.C. 2929.03(F).
Defendant argues that the trial court failed to comply with the mandatory language of R.C. 2929.03(F). Defendant further avers that the trial court failed to state its specific findings as to the existence of any of the mitigating factors set forth in R.C. 2929.04(B), the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors. Defendant also asserts that this failure on the part of the trial court prevents him from properly appealing his death sentence. We disagree.
R.C. 2929.03(F) provides the following:
 [t]he court or the panel of three judges, when it imposes sentence of death, shall state in a separate opinion its specific findings as to the existence of any mitigating factors set forth in division (B) of section 2929.04 of the Revised Code, the existence of any other mitigating factors, the aggravating circumstances the offender was found guilty of committing, and the reasons why the aggravating circumstances the offender was found guilty of committing were sufficient to outweigh the mitigating factors.
According to the statute, the judge who imposes a death sentence has a duty to provide a formal finding of facts concerning the reasons why the aggravating circumstances outweigh the mitigating factors. The court in the case at bar did provide a written opinion which detailed its finding that the jury found by proof beyond reasonable doubt that the Defendant was guilty of the aggravating circumstance in R.C. 2929.04(A)(8).
Upon a review of the trial court's separate opinion, we find that the trial court complied with R.C. 2929.03(F). The trial court fulfilled its duty of providing a separate written opinion explaining why the aggravating circumstance outweighed the mitigating factors. Defendant's twelfth assignment of error is overruled.
 ASSIGNMENT OF ERROR XIII
[Defendant's] death sentence has denied him due process under the law as the trial court erred in adopting the recommendation of the jury and in finding that the aggravating circumstances outweighed the mitigating factor[s].
 A. Defendant's Assignment of Error
Defendant notes that the sole aggravating circumstance was that Ronald Lally was a government witness and was killed to prevent his testimony in a criminal proceeding. Defendant asserts that the many mitigating factors outweighed this aggravating circumstance. Defendant presented the following as mitigating factors: (1) the victim, Ronald Lally, was a crack addict, a criminal, and under the influence of drugs the evening in question; (2) Defendant was a crack addict and under the influence of drugs the evening in question; (3) Defendant expressed his remorse for Ronald Lally's death; (4) Defendant's family members testified that he was a decent, caring father and was loved very much; (5) Defendant's family members knew of his drug addiction and that he sought professional help for his problem; (6) Defendant's family members said that he worked hard, that he was looked up to by them, and that he showed kindness towards them; (7) Defendant only ran into problems when he used drugs; (8) Defendant sought professional help for his drug addiction, but at the time of this incident Defendant had relapsed. Defendant contends that the trial court improperly weighed the aggravating circumstance against mitigation and, thus, improperly imposed a death sentence.
The Ohio Supreme Court has held the following:
 [t]he fact that an item of evidence is admissible under R.C. 2929.04(B)(7) does not automatically mean that it must be given any weight. * * * In fact, the assessment and weight to be given mitigating evidence are matters for the trial court's determination.
State v. Fox (1994), 69 Ohio St.3d 183, 191, quoting State v.Steffen (1987), 31 Ohio St.3d 111, paragraph two of the syllabus and State v. Lott (1990), 51 Ohio St.3d 160, 171. We find that the trial court properly conducted its role. Furthermore, this Court, pursuant to R.C. 2929.05(A), must independently review the evidence in this case and determine whether the aggravating circumstance outweighs the mitigating factors and whether the death sentence is appropriate. Even if errors were committed by the trial court in weighing those factors pursuant to Section2929.03(F), they would be harmless because this Court must repeat the process and make an independent assessment. See State v. Fox,69 Ohio St.3d at 191.
 B. This Court's Independent Review
This Court is required, pursuant to Section 2929.05(A) of the Ohio Revised Code, to conduct an independent review of Defendant's sentence to determine (1) whether the aggravating circumstance defendant was found to have committed outweighs the mitigating factors present in the case, and (2) whether the sentence of death is appropriate. In determining whether the aggravating circumstance outweighs the mitigating factors, the offense and the offender must be considered. State v. Slagle,65 Ohio St.3d at 612-14. In determining whether a sentence of death is appropriate, this Court must determine whether the evidence supports the trial court's findings of the aggravating circumstance that the defendant was found guilty of committing and whether the sentence is excessive or disproportionate in relation to other cases in which the death penalty was imposed. Id. at 612-15. See, also, State v. Steffen, 31 Ohio St.3d at 111. We review the proportionality of Smith's penalty compared to the sixteen other cases in which this Court has affirmed the sentence of death.[1]
During the guilt phase of Defendant's trial, the jury found beyond a reasonable doubt that Defendant committed an aggravating circumstance: that the victim of the offense was a witness to prior offenses by Defendant and was purposely killed to prevent his testimony in a criminal proceeding concerning those prior offenses. R.C. 2929.04(A)(8). Defendant was found to have killed Ronald Lally to prevent Ronald Lally from testifying as a witness in Defendant and Danny's upcoming drug trafficking trials. See R.C. 2929.04(A)(8).
In considering whether the mitigating factors in this case outweigh the aggravating circumstance, this Court must consider the nature and circumstances of the offense; the offender's character, background and history; the six specific mitigating factors listed in Section 2929.04(B) of the Ohio Revised Code; and "[a]ny other factors that are relevant to the issue of whether the offender should be sentenced to death." R.C. 2929.04(B)(7). See, also, R.C. 2929.04(B) and 2929.05(A).
Upon a review of the evidence, we find there is no mitigating value to the nature and circumstances of the offense and little mitigating value in Defendant's character, background, and history. In terms of the statutorily-provided mitigating factors, R.C. 2929.04(B)(1) provides for mitigation when a victim induces the offense. R.C. 2929.04(B)(2) allows for mitigation when the offense would not likely have been committed but for the offender being under duress, coercion, or strong provocation. Ronald Lally's actions of being high on crack cocaine and resisting being beaten up did not induce Defendant to point a gun at Ron Lally, to discuss with Ron Lally the tape recording of the drug purchase implicating Defendant, or to kill Ron Lally. R.C.2929.04(B)(3) provides for mitigation when a defendant has a mental disease or defect. Although Defendant was allegedly under the influence of crack cocaine and was allegedly a crack cocaine addict, we find that such facts should be afforded only a slight amount of mitigation weight. Defendant further argues that he was not the principal offender in this crime, R.C. 2929.04(B)(6). We find overwhelming evidence demonstrating that Defendant was the principal offender. R.C. 2929.04(B)(4) and (B)(5) provide for mitigation where a defendant is young or lacks a prior criminal record. These two factors were not raised by the Defendant and are not relevant to the Defendant.
Although Defendant established some factors that mitigate against the imposition of the death penalty (Defendant's drug problem, the respect Defendant's family has given him for his hard work and kindness, and the help Defendant has sought for his drug problem), this mitigating evidence, taken as a whole, is insufficient to off-set the aggravating circumstance in this case. This Court finds beyond a reasonable doubt that the aggravating circumstance that Defendant was found guilty of committing outweighs the mitigating factors in this case.
This Court next reviews the appropriateness of Defendant's sentence. In conducting this review, this Court must determine whether the evidence supported the trial court's finding beyond a reasonable doubt that Defendant committed the aggravating circumstance that he was found guilty of committing. Defendant and Danny had been charged with drug trafficking. Their trials were set for January 1994. Ronald Lally was a government informant who was wired while purchasing drugs from Defendant and Danny. Ronald Lally was also scheduled to testify against Defendant and Defendant's son at these upcoming drug trafficking trials. Killing Ron Lally made it impossible for Ronald Lally to testify against Defendant for the drug trafficking offenses. This evidence was sufficient to support the trial court's finding beyond a reasonable doubt that Defendant committed the aggravating factor described in R.C. 2929.04(A)(8).
This review of appropriateness must include a consideration of the proportionality of Defendant's penalty compared to other cases that have been before this Court in which the death penalty has been imposed.[2] In nine of those cases, the death penalty was imposed for a single murder committed during the course of one or more felonies. See McNeill, Reynolds, Dennis,Wilson, Phillips, Simko, Johnson, Greer, and Post, supra. In a case where the defendant kidnaped a woman, placed her in the trunk of a car, and then burned the car with her in the trunk, this Court found the following:
 [T]his Court previously affirmed the death sentences imposed in State v. Cooey, a case in which the defendant committed aggravated murder to escape detection, apprehension, trial, or punishment for the crime of kidnaping, and State v. Davis, a case in which the defendant committed aggravated murder to escape detection, apprehension, trial or punishment for the crime of aggravated burglary.
State v. Wilson (Oct. 12, 1994), Lorain App. No. 92CA005396, at 96. This Court concluded that the death penalty sentence was appropriate in a case where the defendant killed three women because they had witnessed a shooting which had occurred earlier that evening. State v. Brooks (July 13, 1994), Summit App. No. 16192, unreported, 34-35, modified on other grounds,75 Ohio St.3d at 148, 151. This Court has also held that the death penalty was not excessive or disproportionate in a case where a defendant first kidnaped and then murdered his victim. State v. Simko (Jan. 20, 1993), Lorain App. No. 91CA005214, unreported, at 32. This Court further held that the death penalty was appropriate where the murder was done in a brutal manner. State v. Cooey (Dec. 23, 1987), Summit App. No. 12943, unreported, at 34.
Because this Court concludes that the aggravating circumstance that Defendant was found guilty of committing outweighs the mitigating factors present in this case, that Defendant's sentence was appropriate, and that his sentence is not excessive or disproportionate in relation to other cases in which the death penalty was imposed, this Court affirms the sentence of death imposed by the trial court.
 ASSIGNMENT OF ERROR XIV
Imposition of the Death Sentence violates the 6th, 8th and14th Amendments to the U.S. Constitution and Sections 2, 9,10 and 16, Article I, of the Ohio Constitution.
Defendant asserts many reasons why the imposition of the death penalty sentence violates his constitutional rights. The Supreme Court of Ohio has addressed the reasons articulated by the Defendant and has held that Ohio's death penalty statutes are constitutional. See State v. Zuern (1987), 32 Ohio St.3d 56, 63;State v. Brooks (1986), 25 Ohio St.3d 144, 154, certiorari denied, 479 U.S. 1101, 94 L.Ed.2d 182; State v. Jenkins (1984),15 Ohio St.3d 164, 167-68, certiorari denied (1985), 472 U.S. 1032,87 L.Ed.2d 643. Based on the foregoing, we find that Defendant's claim lacks merit. Defendant's fourteenth assignment of error is overruled.
All of Defendant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this court, directing the County of Lorain Common Pleas Court to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
 Exceptions. _______________________________ LYNN C. SLABY
FOR THE COURT
DICKINSON, P. J.
BAIRD, J. CONCUR.
[1] State v. Filiaggi (Dec. 10, 1997), Lorain App. No. 95CA006240, unreported; State v. McNeill (Apr. 1, 1997), Lorain App. No. 95CA006158, unreported; State v. Reynolds
(July 10, 1996), Summit App. No. 16845, unreported, affirmed (1998), 80 Ohio St.3d 670; State v. Dennis (May 8, 1996), Summit App. No. 17156, unreported, affirmed (1997), 79 Ohio St.3d 421;State v. Williams (Nov. 1, 1995), Summit App. No. 16418, unreported, affirmed (1997) 79 Ohio St.3d 1; State v.Wilson (Oct. 12, 1994), Lorain App. No. 92CA005396, unreported, affirmed (1996), 74 Ohio St.3d 381, certiorari denied (1996), 519 U.S. ___, 136 L.Ed.2d 78; State v.Phillips (Aug. 31, 1994), Summit App. No. 16487, unreported, affirmed (1995), 74 Ohio St.3d 72, certiorari denied (1996), 517 U.S. ___, 134 L.Ed.2d 938; State v. Brooks (July 13, 1994), Summit App. No. 16192, unreported, affirmed in part and reversed in part (1996), 75 Ohio St.3d 148; State v.Simko (Jan. 20, 1993), Lorain App. No. 91CA005214, unreported, affirmed (1994), 71 Ohio St.3d 483, certiorari denied (1995), 516 U.S. ___, 133 L.Ed.2d 57; State v.Johnson (Nov. 4, 1992), Summit App. No. 15065, unreported, reversed (1994), 71 Ohio St.3d 332, certiorari denied, (1995)515 U.S. 1164, 132 L.Ed.2d 864; State v. Davis (Apr. 18, 1990), Lorain App. No. 88CA004390, unreported, affirmed (1991), 62 Ohio St.3d 326, certiorari dismissed (1992),506 U.S. 803, 121 L.Ed.2d 6; State v. Huertas (July 6, 1988), Lorain App. No. 4202, unreported, affirmed in part and reversed in part (1990), 51 Ohio St.3d 22, certiorari dismissed (1991), 498 U.S. 336, 112 L.Ed.2d 837; State v.Cooey (Dec. 23, 1987), Summit App. No. 12943, unreported, affirmed (1989), 46 Ohio St.3d 20, certiorari denied (1991),499 U.S. 954, 113 L.Ed.2d 482; State v. Benner (July 22, 1987), Summit App. No. 12664, unreported, affirmed (1988),40 Ohio St.3d 301, certiorari denied (1990), 494 U.S. 1090,108 L.Ed.2d 962; State v. Greer (Mar. 4, 1987), Summit App. No. 12258, unreported, affirmed (1988), 39 Ohio St.3d 236, certiorari denied (1989), 490 U.S. 1028, 104 L.Ed.2d 201-02;State v. Post (Jan. 15, 1986), Lorain App. No. 3868, unreported, affirmed (1987), 32 Ohio St.3d 380, certiorari denied (1988), 484 U.S. 1079, 98 L.Ed.2d 1023.
[2] State v. Filiaggi (Dec. 10, 1997), Lorain App. No. 95CA006240, unreported; State v. McNeill (Apr. 1, 1997), Lorain App. No. 95CA006158, unreported; State v. Reynolds
(July 10, 1996), Summit App. No. 16845, unreported, affirmed (1998), 80 Ohio St.3d 670; State v. Dennis (May 8, 1996), Summit App. No. 17156, unreported, affirmed (1997), 79 Ohio St.3d 421;State v. Williams (Nov. 1, 1995), Summit App. No. 16418, unreported, affirmed (1997) 79 Ohio St.3d 1; State v.Wilson (Oct. 12, 1994), Lorain App. No. 92CA005396, unreported, affirmed (1996), 74 Ohio St.3d 381, certiorari denied (1996), 519 U.S. ___, 136 L.Ed.2d 78; State v.Phillips (Aug. 31, 1994), Summit App. No. 16487, unreported, affirmed (1995), 74 Ohio St.3d 72, certiorari denied (1996), 517 U.S. ___, 134 L.Ed.2d 938; State v. Brooks (July 13, 1994), Summit App. No. 16192, unreported, affirmed in part and reversed in part (1996), 75 Ohio St.3d 148; State v.Simko (Jan. 20, 1993), Lorain App. No. 91CA005214, unreported, affirmed (1994), 71 Ohio St.3d 483, certiorari denied (1995), 516 U.S. ___, 133 L.Ed.2d 57; State v.Johnson (Nov. 4, 1992), Summit App. No. 15065, unreported, reversed (1994), 71 Ohio St.3d 332, certiorari denied, (1995)515 U.S. 1164, 132 L.Ed.2d 864; State v. Davis (Apr. 18, 1990), Lorain App. No. 88CA004390, unreported, affirmed (1991), 62 Ohio St.3d 326, certiorari dismissed (1992),506 U.S. 803, 121 L.Ed.2d 6; State v. Huertas (July 6, 1988), Lorain App. No. 4202, unreported, affirmed in part and reversed in part (1990), 51 Ohio St.3d 22, certiorari dismissed (1991), 498 U.S. 336, 112 L.Ed.2d 837; State v.Cooey (Dec. 23, 1987), Summit App. No. 12943, unreported, affirmed (1989), 46 Ohio St.3d 20, certiorari denied (1991),499 U.S. 954, 113 L.Ed.2d 482; State v. Benner (July 22, 1987), Summit App. No. 12664, unreported, affirmed (1988),40 Ohio St.3d 301, certiorari denied (1990), 494 U.S. 1090,108 L.Ed.2d 962; State v. Greer (Mar. 4, 1987), Summit App. No. 12258, unreported, affirmed (1988), 39 Ohio St.3d 236, certiorari denied (1989), 490 U.S. 1028, 104 L.Ed.2d 201-02;State v. Post (Jan. 15, 1986), Lorain App. No. 3868, unreported, affirmed (1987), 32 Ohio St.3d 380, certiorari denied (1988), 484 U.S. 1079, 98 L.Ed.2d 1023.