Francis E. Sweeney, Sr., J.
Beginning in State v. Poindexter (1988), 36 Ohio St.3d 1, 3, 520 N.E.2d 568, 570, and recently reiterated in State v. Scudder (1994), 71 Ohio St.3d 263, 643 N.E.2d 524, we expressed the view that when we review death penalty cases, our obligation under the law does not require us to address all propositions of law in opinion form. We adhere to this view today, and therefore summarily dispose of many propositions of law where either the error was not properly preserved or the propositions have been decided adversely to the appellant. In doing so, we hasten to add that although this opinion does not separately address each of the twenty-one propositions of law (see Appendix), we have fully reviewed the record and passed upon each one prior to reaching our decision. In addition, we independently assessed the evidence relating to the death sentence, balanced the aggravating circumstance against the mitigating factors, and reviewed the proportionality of the sentence to sentences imposed in similar cases. As a result, we affirm the convictions and sentence, including the death penalty.
*488 I
GUILT PHASE
Sufficiency of Evidence
In Proposition of Law I, appellant challenges the sufficiency of the evidence for the capital specification and for the separate kidnapping offense charged in count two.[1]
The capital specification appellant was convicted of was kidnapping: “committing, attempting to commit, or fleeing immediately after committing or attempting to commit kidnapping.” R.C. 2929.04(A)(7). Appellant was also convicted of the separate offense of kidnapping Johnson. R.C. 2905.01, as charged in this case, involves the removing of a person by force, threat, or deception from the place where she is found, or restraining her of her liberty, to terrorize or inflict serious harm on the victim. R.C. 2905.01(A)(3).
Appellant argues that under this court’s decision in State v. Logan (1979), 60 Ohio St.2d 126, 14 O.O.3d 373, 397 N.E.2d 1345, the state failed to present sufficient evidence of either the elements of kidnapping or a separate animus from the animus to commit aggravated murder to sustain his convictions on these charges. Appellant asserts that the alleged kidnapping of Johnson was incidental to the murder, as in State v. Jenkins (1984), 15 Ohio St.3d 164, 198, 15 OBR 311, 340, 473 N.E.2d 264, 295 (no kidnapping where restraint was in a public bank and incidental to robbery).
In Logan, supra, this court held that where the murder is the underlying crime, “a kidnapping in facilitation thereof would generally constitute a separately cognizable offense.” Id., 60 Ohio St.2d at 135, 14 O.O.3d at 379, 397 N.E.2d at 1352. However, the test to determine whether the kidnapping was committed with a separate animus and thus amounts to a separate offense is “whether the restraint or movement of the victim is merely incidental to a separate underlying crime, or instead, whether it has a significance independent of the other offense.” Id. at 135, 14 O.O.3d at 378, 397 N.E.2d at 1351.
In State v. Seiber (1990), 56 Ohio St.3d 4, 14, 564 N.E.2d 408, 420, we found kidnapping where bar patrons were repeatedly ordered to lie on the floor while defendant and his accomplice had drawn guns. When another bystander refused to comply with the demands, he was shot and killed. Under these circumstances, this court held that it was reasonable for a jury to conclude that Seiber had restrained that victim of his liberty and that this evidence was sufficient to support the kidnapping charge and specification.
*489 Clearly, the instant facts present a more compelling case of kidnapping than even Seiber. According to Harold Baker’s testimony, Johnson was restrained and terrorized by the armed appellant for approximately one-half hour. Further evidence indicated that Johnson managed to escape from appellant, but appellant shot her twice in the back while she was fleeing down the school hallway. Thus, contrary to appellant’s assertion, the evidence and testimony indicate that Johnson’s kidnapping was completed prior to the murder, and appellant did not murder Johnson until she fled from him. Therefore, the prosecution presented sufficient evidence to prove not only kidnapping, but also an animus for kidnapping separate from the aggravated murder. We reject this proposition of law.
In Proposition of Law VIII, appellant argues that the state failed to introduce evidence sufficient to convict him of kidnapping Harold Baker. Appellant contends that “any movement of Harold Baker was incidental to the murder of Mary Jane Johnson.”
This proposition of law is also without merit. A review of the evidence reveals that it was sufficient to support appellant’s conviction for kidnapping Baker.
. Baker testified that when he encountered appellant in the teachers’ lounge, appellant had a gun in one hand and an arm around Johnson. When Baker attempted to help Johnson, appellant told him to “get the hell out of here.” When Baker reached for the door leading out to the hallway, appellant told him “No, not there” and motioned with the gun for Baker to go into the teachers’ lounge restroom. After removing the screen from the window, Baker managed to escape. This testimony clearly indicated that Baker was restrained of his liberty to exit the teachers’ lounge and was forced by appellant to enter the lounge restroom which had no outside exit. Moreover, Baker testified he was “scared” because appellant had a gun, thus demonstrating appellant’s terrorizing of Baker (and inferentially Johnson). We reject this proposition of law.
Hearsay
In Proposition of Law VI, appellant argues that the trial court improperly admitted prejudicial hearsay testimony that did not qualify as an exception under either Evid.R. 804(B)(2) — dying declaration, or Evid.R. 803(2) — excited utterance.
The testimony was elicited from Detective Bruce Johnston of the Lorain County Sheriffs Department. Defense counsel challenged Detective Johnston’s testimony on the grounds that the dying declaration exception did not apply, since the victim had no reason to believe she was dying at the time Detective Johnston questioned her. In response, the prosecution claimed that it was relying not only on the dying declaration exception, but also on the excited utterance exception applied in State v. Huertas (1990), 51 Ohio St.3d 22, 31, 553 N.E.2d 1058, 1068. The trial court then permitted the detective’s testimony. *490 The prosecution now concedes that the declaration does not qualify as a dying declaration under Evid.R. 804(B)(2). However, the state asserts it is admissible under the excited utterance exception.
In Huertas, id. at 31, 553 N.E.2d at 1068, this court, quoting paragraph two of the syllabus in Potter v. Baker (1955), 162 Ohio St. 488, 55 O.O. 389, 124 N.E.2d 140, set forth the standard for the excited utterance exception: “To be admissible under Evid.R. 803(2) as an excited utterance, a statement must concern ‘some occurrence startling enough to produce a nervous excitement in the declarant,’ which occurrence the declarant had an opportunity to observe, and must be made ‘before there had been time for such nervous excitement to lose a domination over his reflective faculties. * * * ’ ”
The testimony in issue consisted of Detective Johnston’s questions to the victim, who was unable to speak because she was intubated. The detective testified that the victim nodded her head in response to specific questions posed to her. When asked if appellant had told her that he was going to kill her and kill himself, the victim nodded affirmatively. The victim also nodded yes as to whether she had attempted to run from appellant, and whether appellant had shot her twice and then fled the school building.
Appellant asserts that Huertas is not on point because there the declarant made oral statements, but here the victim only nodded in response to words of the detective. In addition, appellant points to paragraph two of the syllabus in State v. Wallace (1988), 37 Ohio St.3d 87, 524 N.E.2d 466, where this court held: “The admission of a declaration as an excited utterance is not precluded by questioning which: (1) is neither coercive nor leading, (2) facilitates the declarant’s expression of what is already the natural focus of the declarant’s thoughts, and (3) does not destroy the domination of the nervous excitement over the declarant’s reflective faculties.”
A review of Huertas and Wallace justifies the admission of the testimony as an excited utterance. Given that the victim was unable to speak because of the intubation in her throat, the questions posed to her by the detective could certainly be characterized as leading under the syllabus in Wallace, supra. However, the questioning by the detective does not appear to be coercive, and the victim could have readily shook her head “no” to any of the questions, since the detective described her as being “alert” and “aware of what was going on.” Therefore, appellant’s sixth proposition of law is overruled.
In Proposition of Law XII, appellant contends that the testimony of Mary Hembree and Cheryl Hutchison contained irrelevant and prejudicial hearsay.
In the first instance, appellant characterizes as irrelevant the testimony of Hembree, the best friend of the deceased victim, who testified with respect to her activities with the victim on the night before the shooting. Appellant asserts that *491 this testimony was not used by the state to show that appellant had harassed the victim, but rather to elicit testimony from Hembree that the victim had said she was “scared,” which was clearly hearsay under Evid.R. 801(C).
The other instance of hearsay cited by appellant concerns the testimony of Cheryl Hutchison, the victim’s daughter. In response to the prosecutor’s inquiry as to why the victim had changed her phone number, Hutchison testified that her mother had changed the number because appellant kept calling her mother after being told to stop. Defense counsel objected on hearsay grounds, but the trial court overruled the objection.
For Hembree’s testimony, the prosecution cited Evid.R. 803(1) to support admission of the hearsay statements as statements of present sense impressions. In support of Hutchinson’s testimony, the prosecutor referred to “present sense of mind,” conflating the exceptions of Evid.R. 803(1) and (3). Evid.R. 803(1) permits admission of “[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition * * *.” The court of appeals found the testimony of Hembree to be properly admitted under Evid.R. 803(3), which permits “[a] statement of the declarant’s then existing state of mind, emotion, [or] sensation * * In addition, the appellate court held that Hembree’s testimony was “arguably relevant” to show that appellant was distraught and that he was following Mary Jane Johnson on the night before the shooting, showing prior calculation and design on the part of appellant.
The testimony of both witnesses is relevant, and its admission under Evid.R. 803(3) is supportable. Testimony similar to Hembree’s was upheld in State v. Apanovitch (1987), 33 Ohio St.3d 19, 21-22, 514 N.E.2d 394, 398 (Testimony that the victim was fearful and apprehensive was not inadmissible hearsay and was properly admitted.).
Assuming, arguendo, that the testimony should not have been allowed, the other evidence in the case is still overwhelming. In addition, since this case was tried before a three-judge panel, it is presumed that the court considered only the relevant, material and competent evidence in arriving at its judgment, State v. Post (1987), 32 Ohio St.3d 380, 384, 513 N.E.2d 754, 759; State v. White (1968), 15 Ohio St.2d 146, 151, 44 O.O.2d 132, 135, 239 N.E.2d 65, 70, and nothing in the record compels a contrary conclusion. Consequently, any error is harmless beyond a reasonable doubt. Accordingly, appellant’s twelfth proposition of law is rejected.
Prejudicial Expert Testimony During Cross-examination
In Proposition of Law XIII, appellant contends that the trial court permitted inadmissible, prejudicial expert testimony during cross-examination. This testimony was elicited by the prosecution from appellant’s expert witness, Dr. Robert *492 Forney, a pathologist called to testify regarding appellant’s blood-alcohol level at the time of the murder.
During direct examination, Dr. Forney testified that based on tests he conducted upon appellant’s blood sample taken after his arrest, appellant’s blood-alcohol level at the time of the shooting would have been .14 percent. On cross-examination, the state attempted to ask Dr. Forney whether a person with a blood-alcohol level of .14 percent could form specific intent or purpose. Defense counsel objected and the prosecutor rephrased the question several times, which prompted further objections by appellant. Dr. Forney responded as follows to the prosecutor’s question whether he understood the defense of intoxication: “[I]f intoxication is to such a degree as to prevent the formation of intent, that may be considered as a mitigating circumstance by the Court.”
When asked by the prosecutor, over defense objection, whether a person with a blood-alcohol content of .14 percent would be so intoxicated as to prevent formation of intent, Dr. Forney responded, “No, they would not be so intoxicated.” Upon defense counsel’s request that the answer be stricken as too confusing on legal issues as to which Dr. Forney could not testify, the court replied:
“He’s [Dr. Forney] talking about his belief and his field as a toxicological expert. * * * I’m not going to strike it. We will give it such weight as is appropriate.
“We are well aware of our responsibility to rule on issues of law.”
Dr. Forney further testified that while appellant’s blood-alcohol level of .14 percent would affect his perception and judgment as well as be disinhibiting to him, “it would not go to the purpose of Mr. Simko on August 7th, 1990.” Defense counsel’s motion to strike this statement was overruled.
“Purpose” and “intent” are not arcane legal terms unfamiliar to nonlawyers. Thus, Dr. Forney’s testimony in this regard did not constitute a legal determination but was merely his professional opinion as to how a .14 percent blood-alcohol level will affect a person’s mind. This opinion meets the criteria of Evid.R. 702. Accordingly, appellant’s thirteenth proposition of law is overruled.
Ineffective Assistance of Counsel
In Proposition of Law XVT, appellant claims he was deprived of the effective assistance of counsel throughout his trial. We have considered appellant’s arguments, and find that he has failed to meet his burden of establishing ineffective assistance under the standards set forth in Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. We, therefore, reject this proposition of law.
*493 II
PENALTY PHASE
Appropriateness of Death Penalty
In his second proposition of law, appellant submits that the facts of this case do not warrant the sentence of death. Appellant argues that he presented substantial mitigating evidence, that he was found guilty of only one aggravating circumstance, and that the kidnapping was merely incidental to the aggravated murder. Appellant further argues that the court of appeals’ review of the trial court’s action in this respect was cursory, contrary to R.C. 2929.05, and unconstitutional.
First, with respect to appellant’s assertion that the kidnapping of Mary Jane Johnson was merely incidental to the aggravated murder, this argument was explored and rejected under Proposition of Law I.
Second, a review of the trial court’s separate opinion, required pursuant to R.C. 2929.03(F), indicates that the court thoroughly explored various possible mitigating factors, including the history, character and background of appellant. The trial court gave “some weight” to appellant’s lack of a prior criminal history, as well as appellant’s work record, service record, adjustment to his incarceration, and his support and assistance of his family members. The court also considered appellant’s remorse. Nevertheless, the three-judge panel found that the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt. Similar to the trial court in State v. Stumpf (1987), 32 Ohio St.3d 95, 103, 512 N.E.2d 598, 607; and State v. Steffen (1987), 31 Ohio St.3d 111, 31 OBR 273, 509 N.E.2d 383, the trial panel below properly discharged its duties under R.C. 2929.03(F).
The court of appeals’ discussion of the mitigating factors was somewhat more than cursory, but not as thorough as the trial court’s. In addition, the appellate court failed to state what weight, if any, it gave to any of the mitigating factors in favor of the appellant. Nevertheless, this court’s independent weighing of the aggravating circumstance versus the mitigating factors and proportionality review will cure any error in this regard. State v. Clark (1988), 38 Ohio St.3d 252, 263, 527 N.E.2d 844, 856; State v. Evans (1992), 63 Ohio St.3d 231, 253, 586 N.E.2d 1042, 1059.
For these reasons, we reject Proposition of Law II.
Errors in Sentencing Opinion and Penalty Phase
In his third proposition of law, appellant contends that errors within the sentencing opinion of the trial court necessitate vacation of his capital sentence.
*494 Appellant asserts that the trial court made findings that were inconsistent with the evidence presented at trial. Specifically, appellant contends there was no evidence of when or where the victim was shot. While it is true that the prosecution did not present an eyewitness blow-by-blow account of the victim’s escape or the shooting by appellant, the physical and testimonial evidence was more than sufficient for the court to infer that appellant shot the victim as she escaped and ran down the school hallway.
Appellant next cites a misrepresentation of the record in the sentencing opinion’s statement that the victim had indicated to appellant that she did not want to reestablish their relationship. The mistake was certainly harmless. Appellant then cites seven other instances in which the sentencing opinion allegedly misrepresented the record by failing to include evidence that could have been mitigating. However, as pointed out by the appellate court below, “while the panel was required to consider and weigh the nature of the circumstances of the offenses with the mitigating factors [Stwmpf, supra ], as trier of fact, it was not required to believe or consider relevant all evidence presented to it. Furthermore, the panel was not required to enumerate every piece of evidence presented in the record of this opinion.”
While appellant asserts that, based on the language of the sentencing opinion, the court might not have found him guilty of the aggravating circumstance until the penalty phase, the filed verdicts show that the finding of guilt was properly made during the guilt phase. Likewise, appellant’s argument concerning the trial court’s reference to “circumstances” in the plural at several points in the opinion, rather than to the single aggravating circumstance, is similar to the argument rejected by this court in State v. Jells (1990), 53 Ohio St.3d 22, 33-34, 559 N.E.2d 464, 475-476.
Appellant also claims error in the sentencing opinion where the trial court found “that the Defendant has not established by a preponderance of the evidence sufficient mitigating, factors set forth in R.C. 2929.04(B) which prevent the aggravating circumstances from outweighing the mitigating factors beyond a reasonable doubt.” Although appellant asserts that the trial court erroneously switched the burden of proof to him, appellant misreads the trial court’s statement.
For all these reasons, Proposition of Law III is overruled.
In his fifth proposition of law, appellant argues that three egregious errors during the penalty phase compel vacation of his death sentence.
First, appellant seizes on a comment made by one member of the panel during a hearing prior to the penalty phase: “ * * * I am not clear on a distinction between mitigating factors and exculpatory evidence * * *.” Appellant also cites *495 a statement by defense counsel that is inconsistent with State v. Holloway (1988), 38 Ohio St.3d 239, 527 N.E.2d 831, paragraph one of the syllabus:
“I think mitigating evidence, Your Honor, has been defined that mitigating factors are factors that while they do not justify or excuse the crime, nevertheless in fairness and mercy may be considered by you as extenuating or reducing degree of the defendant’s blame for punishment.”
Appellant points out that counsel for the state also injected culpability into a definition of “mitigation,” and that this combination of errors mandates vacation of the death sentence.
While it is clear that mitigating factors “are not necessarily related to a defendant’s culpability,” Holloway, supra, paragraph one of the syllabus, the sentencing opinion indicates that the trial court considered all the proffered mitigating factors, not merely those related to appellant’s culpability.
Appellant also contends under this proposition that the trial court erred in ordering a guilt-phase transcript. Defendant relies on State v. DePew (1988), 38 Ohio St.3d 275, 528 N.E.2d 542, in arguing that under R.C. 2929.03(D)(3), the sentencing court may only consider the “relevant evidence raised at trial,” and that admission of the transcript would permit the court to consider irrelevant and prejudicial evidence contained therein.
The instant cause was tried before a three-judge panel, and the admission of the transcript by the panel did not deprive appellant of a fair trial since the court may consider “the testimony” at trial. In addition, the presumption applies that the trial panel considered only the relevant, material and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary. Post, supra, 32 Ohio St.3d 380, 513 N.E.2d 754. Since it does not affirmatively appear that the trial panel considered irrelevant, immaterial or incompetent evidence, this argument is rejected.
Appellant also asserts that the trial court erred in allowing, over defense counsel’s objection, improper rebuttal testimony from James Simko, appellant’s son, that appellant hit his ex-wife. However, in its sentencing opinion, the panel stated that it did not find this testimony credible and did not rely on it. Accordingly, this proposition of law is meritless.
Ill
INDEPENDENT ASSESSMENT OF SENTENCE
Pursuant to our duties imposed by R.C. 2929.05(A), we now independently review the death penalty sentence for appropriateness and proportionality.
*496 The evidence establishes beyond a reasonable doubt the aggravating circumstance that appellant killed Johnson during the commission of a kidnapping.
The nature and circumstances of the offense provide few mitigating features. Appellant and Johnson had an on-again-off-again relationship that was definitely off at the time of the offenses. Although appellant went on a drinking binge during the twelve or so hours prior to the shooting, evidence indicated that appellant was able to plan, move, and make himself understood on the morning of the shooting. The facts that appellant attempted to execute a will, emptied his bank account and told his son that he was going to kill himself and Johnson, that he declared to his cousin that he was going to shoot two people, that he purchased a gun and ammunition several days before and learned how to use the weapon, and that the night before the shooting appellant stalked Johnson all indicate that his crimes were not a sudden or provoked act of passion. Appellant held his victim at bay for approximately one-half hour, terrorizing her and kidnapping a coworker in order to prevent him from obtaining help for the victim. Five shots were fired from appellant’s gun, two of which were directed at Johnson’s back as she tried to escape from him. Afterwards, appellant fled and left her to die near the school dumpsters. Help for Johnson did not arrive until sometime later.
Appellant’s history, character, and background do provide mitigating features. Appellant’s father was a cruel man and an alcoholic. Evidence established that appellant, too, was alcohol' dependent. His mother was possessive and demanding. However, appellant had several siblings, all of whom graduated from college. Appellant served eight years in the armed service and received an honorable discharge. Coworkers and family members found appellant helpful and likable.
With respect to the statutory mitigating factors, appellant’s lack of a significant criminal history is entitled to some weight, R.C. 2929.04(B)(5). Stumpf, supra; State v. Brewer (1990), 48 Ohio St.3d 50, 64, 549 N.E.2d 491, 505. Under the “other factors” provision, R.C. 2929.04(B)(7), appellant’s voluntary intoxication may be given some weight, see State v. Lawson (1992), 64 Ohio St.3d 336, 352, 595 N.E.2d 902, 914. However, under the circumstances of this case, intoxication is not accorded much weight, given the expert and eyewitness testimony of appellant’s level of intoxication and behavior at the time of the murder. State v. Slagle (1992), 65 Ohio St.3d 597, 614, 605 N.E.2d 916, 931. The avoidant personality disorder that appellant suffers from, as testified to by Dr. Brown, is entitled to some weight in mitigation. See State v. Davis (1992), 63 Ohio St.3d 44, 51, 584 N.E.2d 1192, 1198. However, this disorder does not qualify as a “mental disease or defect” under R.C. 2929.04(B)(3). See Seiber, supra, 56 Ohio St.3d at 9, 564 N.E.2d at 415. In addition, appellant’s alcoholism does not qualify *497 as a “mental disease or defect.” See State v. Lewis (1993), 67 Ohio St.3d 200, 209, 616 N.E.2d 921, 928. Appellant’s expression of remorse during his unsworn statement should be accorded little if any weight, given the history of his relationship with the victim. See Post, supra, 32 Ohio St.3d at 394, 513 N.E.2d at 768. Also, appellant’s work record, service record, adjustment to incarceration, and assistance to his family members are entitled to some weight in mitigation. While appellant was under stress due to the breakup of his relationship with the victim, it cannot be characterized as coercion or strong provocation and is not entitled to any weight under R.C. 2929.04(B)(2). See State v. Bedford (1988), 39 Ohio St.3d 122, 133, 529 N.E.2d 913, 924. None of the other statutory mitigating factors appears relevant.
Upon weighing the aggravating circumstance against the mitigating factors, the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt. Appellant deliberately went to Johnson’s place of employment armed with a weapon he purchased only a few days before the murder. When Johnson entered the teachers’ lounge, appellant used the gun to restrain her of her liberty. Appellant held Johnson against her will and prevented her from leaving the lounge. In fact, appellant had the opportunity to release Johnson when Baker came to her aid. However, appellant chose to restrain Johnson and ordered Baker into the restroom. Later, Johnson managed to escape, and was shot twice in the back. This whole ordeal lasted approximately thirty minutes. Thus, the evidence proved a calculated, prolonged and unprovoked kidnapping in the course of which appellant purposely murdered Johnson.
The death penalty imposed in this case is both appropriate and proportionate when compared with similar capital cases. While the circumstances of the instant murder do not contain the brutality present in felony-murder cases involving kidnapping such as State v. Buell (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795; State v. Cooey (1989), 46 Ohio St.3d 20, 544 N.E.2d 895; or State v. Spirko (1991), 59 Ohio St.3d 1, 570 N.E.2d 229, the penalty is justifiable when compared to the sentence imposed in State v. Brewer (1990), 48 Ohio St.3d 50, 549 N.E.2d 491; State v. Seiber, supra, 56 Ohio St.3d 4, 564 N.E.2d 408; and State v. Fox (1994), 69 Ohio St.3d 183, 631 N.E.2d 124.
Accordingly, the judgment of the court of appeals is affirmed.

Judgment affirmed.

A.W. Sweeney, Douglas and Resnick, JJ., concur.
Moyer, C.J., Wright and Pfeifer, JJ., dissent.

. At trial, defense counsel conceded that appellant had killed Johnson.