JOURNAL ENTRY AND OPINION
Appellant Akeem Camp appeals the decision of the trial court convicting him of aggravated murder with two firearm specifications and sentencing him accordingly. Camp assigns the following four errors for our review:
 I. THERE WAS INSUFFICIENT EVIDENCE OF AGGRAVATED MURDER SINCE NO REASONABLE FACTFINDER COULD FIND THAT THE EVIDENCE ESTABLISHED PRIOR CALCULATION AND DESIGN BEYOND A REASONABLE DOUBT.
 II. THE TRIAL COURT ERRED BY ALLOWING TWO WITNESSES TO TESTIFY THAT THE VICTIM TOLD THEM THAT THE APPELLANT WAS HIS ASSAILANT SINCE SUCH TESTIMONY CONSTITUTED INADMISSIBLE HEARSAY AND THEREBY VIOLATED THE APPELLANT'S RIGHT OF CONFRONTATION UNDER THE STATE AND FEDERAL CONSTITUTIONS.
 III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY THE CONSTITUTIONS OF THE UNITED STATES AND OF THE STATE OF OHIO WHEN DEFENSE COUNSEL NEGLECTED TO OBJECT TO INADMISSIBLE HEARSAY.
 IV. THE PRISON TERM OF TWENTY-FIVE YEARS TO LIFE IMPOSED FOR THE APPELLANT'S AGGRAVATED MURDER CONVICTION IS AN ILLEGAL SENTENCE AND VOID SINCE THERE WAS NO AGGRAVATING CIRCUMSTANCES SPECIFICATION AND THE ONLY PRISON TERM AUTHORIZED BY STATUTE FOR THAT OFFENSE WITHOUT SUCH A SPECIFICATION IS TWENTY YEARS TO LIFE.
Having reviewed the record and the legal arguments of the parties, we affirm the decision of the trial court and remand the case for resentencing. The apposite facts follow.
Appellant Akeem Camp was indicted for aggravated murder with two firearm specifications in connection with the shooting death of Antwan Peterson. The evidence at trial revealed that, on January 9, 1997, Peterson was working as a master barber at Standing Ovation Barber Shop. At around 10:00 a.m., Peterson walked outside to confront five males who were standing in front of the barber shop. Peterson asked the group to move away from the front of the shop. All of the men complied except Camp who said "I'm not going anywhere" and "I was here before you and I'll be here after you." When Camp again refused his request to move away from the front of the shop, Peterson went back inside the barber shop.
Approximately five minutes later, Camp walked up to the front window of the barber shop and tapped on the window with a gun and stared at Peterson. Another barber at the shop called the police, but Camp left before they arrived. Peterson told police that he was threatened by a man with a gun. He also gave police a description of the man. Police searched the area but were unable to find Camp.
Later that evening, at about 7:30 or 8:00 p.m., Peterson left the barber shop for the day. About three minutes after Peterson walked out of the front door, Richard Hayden, a barber in the shop, heard several gunshots. About five seconds later, Hayden saw Camp walk past the front window of the barber shop and look inside. Hayden went outside to investigate and found Peterson lying on the sidewalk. When Hayden asked what happened, Peterson replied "Call 911. I can't feel my legs."
Hayden called for an ambulance. Police arrived and interviewed Hayden. Hayden told them that the gunman was Akeem Camp also known as "Doughboy." The police investigation located six nine millimeter shell casings on the ground in front of the shop. It was later revealed that Peterson was shot three times. One of the bullets passed through his left forearm. One bullet caused a flesh wound to the small of his back. The third bullet struck Peterson in the middle third of his back, severely damaging his spinal cord, pancreas, small intestine, and one of the veins to his heart. The bullet lodged in the soft tissue of Peterson's abdomen.
Peterson's mother, Gwendolyn Williams, arrived at the scene after being summoned by her brother in law. When she arrived, Peterson was in the ambulance. Williams rode with Peterson in the ambulance as they took him to St. Luke's Medical Center. Peterson was taken into surgery immediately upon his arrival at the hospital and remained in surgery for seven to eight hours. Thereafter, he was taken to surgical recovery where Williams was able to speak to him for the first time since the shooting. Their first conversation took place from 12 to 16 hours after the shooting. While in recovery, Peterson told his mother that "Doughboy" shot him. When Williams indicated she didn't know who "Doughboy" was, Peterson replied "Akeem Camp, the guy that stayed next to us on 116th Street." Williams reported the information to police.
On February 14, 1997, Detective Ralph Simms interviewed Peterson in the hospital. Peterson told Simms that Camp was the person who shot him. Peterson also signed a typewritten statement implicating Camp and picked Camp out of a six-picture photo array. On March 1, 1997, Peterson died of multiple organ failure caused by the gunshot wounds. Police charged Camp with aggravated murder.
Camp filed a pretrial motion in limine seeking to exclude the statement made by Peterson to his mother at the hospital implicating Camp as the man who shot him. Camp also challenged the photographic array as being unduly suggestive. Both motions were denied.
After a jury trial, Camp was convicted on all counts and sentenced to twenty-five years to life in prison. This appeal followed.
In his first assignment of error, Camp argues the state presented insufficient evidence to convict him of aggravated murder. When reviewing the sufficiency of evidence to support a conviction, we must view the evidence in a light most favorable to the prosecution. State v. Mason (1998), 82 Ohio St.3d 144,163, certiorari denied (1998), 119 S.Ct. 624, citing State v.Jenks (1991), 61 Ohio St.3d 259 at paragraph two of the syllabus. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." Id. citingState v. DeHass, 10 Ohio St.2d 230 at paragraph one of the syllabus. With these principles in mind, we must assess not whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. State v. Epps (Dec. 10. 1998), Cuyahoga App. No. 73308, unreported, citing State v. Thompkins (1997), 78 Ohio St.3d 380,390, rehearing/reconsideration denied (1997), 79 Ohio St.3d 1451. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.State v. Jenks (1991), 61 Ohio St.3d 259 at paragraph two of the syllabus.
R.C. 2903.01 provides:
 No person shall purposely, and with prior calculation and design, cause the death of another * * *
In this case, the state presented sufficient evidence upon which the jury could reasonably convict Camp of aggravated murder. A total of six shell casings were found at the scene. Three bullet holes were located in the front facade of the store. The coroner testified that Peterson died as a result of three gunshot wounds. Police testified that the shell casings found at the scene of the shooting, the bullet fragments taken from Peterson's clothing in the emergency room, and a bullet removed from Peterson's body at autopsy all came from the same 9 millimeter weapon. Hayden testified that Camp knocked on the front window of the barber shop with a "black nine millimeter or either a .380" as he stared at Peterson after their sidewalk confrontation. Just seconds after gunshots were fired outside the barber shop, Hayden observed Camp walk past the front window away from where Peterson was found. Shortly after Peterson awakened in the hospital from emergency surgery, he told his mother that Camp was the person who shot him. Peterson knew Camp as a former neighbor who once lived next door to Peterson's mother's house. He also told Detective Ralph Simms that it was Camp who shot him. Peterson was able to immediately pick Camp out of a photo lineup shown to him at the hospital. This evidence is sufficient to enable a reasonable factfinder to find that Camp purposely caused Peterson's death.
In order to establish prior calculation and design, the state had to show that Camp had sufficient time and opportunity to plan the homicide and that the circumstances indicate a scheme designed to implement the calculated design to kill. State v.Simms (Sept. 19, 1996), Cuyahoga App. No. 69314, unreported, appeal dismissed (1997), 77 Ohio St.3d 1543, citing State v.Cotton (1978), 56 Ohio St.2d 8. Although a momentary or instantaneous deliberation is not sufficient to constitute prior calculation and design, the state need not prove that the defendant underwent a prolonged thought process. Id. citing Statev. D'Ambrosio (1993), 67 Ohio St.3d 185, 196, certiorari denied (1996), 116 S.Ct. 1578, and State v. Bailey (1992), 90 Ohio App.3d 58, appeal dismissed (1994), 68 Ohio St.3d 1212. The relevant factors to consider are as follows:
 (1) whether the accused knew the victim prior to the crime and whether the relationship was strained, (2) whether the accused gave thought and preparation to the weapon used or site of the murder, (3) whether the act was drawn out over a period of time or resulted from an instantaneous eruption of events.
State v. Jenkins (1976), 48 Ohio App.2d 99, 102.
We conclude that the state presented sufficient evidence that Camp committed the murder with prior calculation and design. Camp's initial confrontation with Peterson took place at approximately 3:00 p.m. Hayden testified that Camp returned five or ten minutes later, pulled a gun from his pocket, tapped on the front window of the barber shop, and stood holding the gun for approximately ten seconds. Camp left after police were called. Officer David Pochatek confirmed that Peterson reported being threatened with a gun at the barber shop at about 3:30 p.m.
Several hours later, at about 7:30 or 8:00 p.m., Camp returned to the barber shop and fired six shots at Peterson as he left the barber shop. Three of the shots struck Peterson and later caused his death.
We conclude that the evidence shows clearly that over four hours elapsed from the time of the initial confrontation on the sidewalk to the shooting. Peterson knew Camp from his old neighborhood and argued with him when Camp refused to move from the front of the barber shop. Shortly after the argument, Camp returned to the barber shop and threatened Peterson with a gun. A few hours later, Camp shot Peterson several times as he left the store alone after dark. The location where Peterson was shot was away from the front window of the barber shop so no one inside the barber shop could see the shooting. We conclude that the evidence sufficiently establishes a premeditated killing. Camp's first assignment of error is overruled.
In his second assignment of error, Camp argues the trial court erred by allowing Gwendolyn Williams and Detective Ralph Simms to testify that Peterson named Camp as the person who shot him. He argues the testimony was hearsay and should have been excluded by the trial court. The state maintains that the statement was properly admitted under the excited utterance exception to the hearsay rule. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801 (C). Generally, hearsay evidence is not admissible at trial. Evid.R. 802.
Evid.R. 803 (2) provides that excited utterances are exceptions to the hearsay rule. An excited utterance is defined as "a statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
Excited utterances are admissible because a statement made while a "declarant is under such a state of emotional shock that his reflective processes have been stilled" is "not likely to be fabricated." State v. Taylor (1993), 66 Ohio St.3d 295, 300. (Citation omitted.) The Taylor court applied a four part test to determine if an excited utterance may be admissible:
 (a) that there was some occurrence startling enough to produce a nervous excitement in the declarant, which was sufficient to still his reflective faculties and thereby make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs, and thus render his statement or declaration spontaneous and unreflective;
 (b) that the statement or declaration, even if not strictly contemporaneous with its exciting cause, was made before there had been time for such nervous excitement to lose a domination over his reflective faculties, so that such domination continued to remain sufficient to make his statements and declarations the unreflective and sincere expression of his actual impressions and beliefs;
 (c) that the statement or declaration related to such startling occurrence or the circumstances of such startling occurrence, and;
 (d) that the declarant had an opportunity to observe personally the matters asserted in his statement or declaration.
Taylor at 300 — 301.
The contemporaneity of the statement is a factor in determining its admissibility but is not controlling. State v. Smith (1986),34 Ohio App.3d 180, 190. It must be considered along with factors such as the nature of the event, the victim's state of mind, and all other circumstances. Id. The controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection. State v. Humphries (1992), 79 Ohio App.3d 589,598.
"To be admissible under Evid.R. 803 (2) as an excited utterance, a statement must concern "some occurrence startling enough to produce a nervous excitement in the declarant," which occurrence the declarant had an opportunity to observe, and must be made "before there had been time for such nervous excitement to lose a domination over his reflective faculties.'" State v.Smith (1997), 80 Ohio St.3d 89, 107 — 108, certiorari denied (1998), 118 S.Ct. 1811, 140 L.Ed.2d 949. (Citations omitted.)
Williams testified that Peterson was taken straight to surgery upon his arrival at the hospital. He remained in surgery for eight or nine hours. Thereafter, he was taken to the surgical recovery room where he told Williams that Camp shot him less than ten minutes after she arrived. A shooting victim's statement identifying her assailant has been held to be an excited utterance when made while she was being prepared for surgery.State v. Simko (Jan. 20, 1993), Lorain App. No. 91CA005214, unreported, affirmed (1994), 71 Ohio St.3d 483. Additionally, the statement of a victim, taken thirty to forty-five minutes after a stabbing and while doctors were treating the victim, has been held to be admissible as an excited utterance. Id. citing Statev. Huertas (1990), 51 Ohio St.3d 22, 31, certiorari dismissed (1991), 498 U.S. 336, 111 S.Ct. 805, 112 L.Ed.2d 837. In an attempt to distinguish these cases, Camp argues there was no evidence that Peterson was excited or agitated at the time he made the statement.
When evaluating whether statements are made while a declarant is still under the influence of an exciting event, we must give a great deal of deference to the trial court's determination. In re Michael (1997), 119 Ohio App.3d 112, 131, citing State v. Duncan
(1978), 53 Ohio St.2d 215, 219 — 220. In this case, the trial court pointed out that Peterson had just come out of surgery at the time the statement was made and had not yet had time for reflective thought. We agree with the trial court's assessment. Although some time had elapsed between the actual shooting and the time the statement was made, it belies logic to conclude that Peterson was capable of reflective thought during the eight or nine hours that he was in surgery. His statement, made shortly after he went to the recovery room, qualifies as an excited utterance and was properly admitted as an exception to the hearsay rule.
Camp also challenges the admission of Peterson's statement to Detective Simms that Camp was the person who shot him. Camp argues the statement was hearsay as it was offered for the truth of the matter asserted. However, the testimony was related to the basis or reason for the officer's actions during an investigation and is not hearsay. See State v. Williams (1996), 115 Ohio App.3d 24,44, citing State v. Easley (June 13, 1995), Franklin App. No. 95APAOl — l, unreported. See also State v. Thomas (1980),61 Ohio St.2d 223, 232 ("It is well established that extrajudicial statements made by an out — of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed.")
The defense spent a great deal of time on cross examination questioning how Camp became a suspect in the case and challenging the police officers' decision to focus their investigation on Camp. The challenged evidence goes directly to this issue and was properly admitted by the trial court. Camp's second assignment of error is overruled.[1]
In his third assignment of error, Camp argues he was denied the effective assistance of counsel due to counsel's failure to object to inadmissible hearsay testimony. In light of our conclusion that the testimony was properly admitted by the trial court, we find that Camp was not prejudiced by trial counsel's failure to object. Camp's third assignment of error is overruled.
In his fourth assignment of error, Camp argues his sentence of twenty — five years to life was an illegal sentence not authorized by the Ohio Revised Code. We agree.
2929.02 provides that a person who is convicted of or pleads guilty to aggravated murder in violation of section 2903.01 of the Revised Code shall suffer death or be imprisoned for life, as determined pursuant to R.C. 2929.022, R.C. 2929.03, and R.C.2929.04. The only section relevant to this case is R.C. 2929.03. R.C. 2929.03(A)(1) provides:
 If the indictment or count in the indictment charging aggravated murder does not contain one or more specifications of aggravating circumstances listed in division (A) of section 2929.04 of the Revised Code, then, following a verdict of guilty of the charge of aggravated murder, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender.
There is no provision for a sentence of twenty-five years to life. In its brief before this court, the state argues that R.C.2903.01 was amended effective July 1, 1996, to impose a penalty of twenty-five years to life for a violation of R.C. 2903.01
without a death penalty specification. However, our review of the statute reveals that the twenty — five year sentence applies only to offenders whose indictments for aggravated murder include specifications of aggravated circumstances listed in R.C.2929.04. The indictment against Camp did not contain any of the R.C. 2929.04 specifications. Accordingly, the trial court could only sentence Camp to twenty years to life. Therefore, we remand this case to the trial court for resentencing on the aggravated murder charge.
Camp's conviction is affirmed. This case is remanded to the trial court for resentencing.
Judgment affirmed and remanded.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PORTER. A.J. and
PATTON.J., CONCUR.
 _______________________ PATRICIA ANN BLACKMON JUDGE
N.B. This entry is an announcement of the court's decision. See App.R. 22(E), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See also, S.Ct.Prac.R. II, Section 2(A)(1).
[1] We must also note that the defense failed to object to either statement at trial. Ohio courts have held that "a denial of a motion in limine does not preserve error for review. A proper objection must be raised at trial to preserve error."State v. Blair (1990), 70 Ohio App.3d 774, 792. [citing State v.Brown (1988), 38 Ohio St.3d 305 at paragraph three of syllabus, certiorari denied (1989), 489 U.S. 1040]. See also State v.Prince (1991), 71 Ohio App.3d 694, 698; State v. Maurer (1984),15 Ohio St.3d 239, 259, certiorari denied (1985),472 U.S. 1012.