JOURNAL ENTRY and OPINION
{¶ 1} Anthony Jackson appeals from a judgment of the common pleas court entered pursuant to a jury verdict finding him guilty of kidnaping, felonious assault, and improperly discharging a firearm into a habitation, each count with a firearm specification. On appeal, Jackson has asserted nine assignments of error claiming denial of due process in that the court failed to instruct the jury as to his privilege to discharge a weapon in his own home; permitted the state to call witnesses at trial despite its failure to provide discovery until the day of trial; failed to instruct the jury on "serious physical harm" and intervening cause, and diluted the requirement of purpose in its jury instructions; asserted claims of insufficiency of evidence and error in imposing consecutive sentences. After a thorough review of the record, we reject his assignments and we affirm the judgment of the trial court.
 {¶ 2} The record reveals that, on August 16, 2001, 15 year old Briana Holland and 17 year old Tiera Price visited 20 year old Anthony Jackson's home, the second floor of a double home his mother rented at 598 Eddy Road in Cleveland. Jackson became angry over a dispute about money and discharged his handgun several times terrorizing the girls and forcing one at gunpoint to reenter the home. Jackson was arrested on the scene by Cleveland SWAT and a grand jury indicted him for attempted murder, kidnaping, felonious assault, and improperly discharging a firearm into a habitation, each count containing a firearm specification.
 {¶ 3} At trial Price stated she went to Jackson's home to drink vodka with him, when he accused her of stealing money which she had been holding for him. When Jackson went into his bedroom, Price heard gunshots. She then saw him walk through the house with a gun onto the front porch where he fired off several more rounds. He became angry, proceeded to the kitchen, fired his gun again and demanded that Price hand over his money. A frightened Price then called her cousin Holland to see if she could pick her up and help bring clothes home from Jackson's house. Holland arranged to be dropped off at Jackson's home and then sat down at the dining room table with them and observed his gun. Holland then asked if she could take the gun off the table and she claimed he agreed. However, he became angry again and asked where she put his gun. At that point, the girls felt threatened and ran out of the house and hid behind a truck in a parking lot across the street.
 {¶ 4} Price then ran to call police. Jackson appeared out of his front door and called to Holland. She stated that she feared Jackson would use the gun so she complied and approached him. Jackson then ran out of the house and put his gun in her back and told her to "get her ass upstairs." Holland went into the house and up the stairs as ordered. Jackson told her to sit on the floor. Jackson then proceeded to storm through the apartment screaming profanities.
 {¶ 5} Holland then asked him if she could use the bathroom and he agreed. After she went in he fired his gun through the wall narrowly missing her. She testified she felt the bullet pass by her head.
 {¶ 6} Price then called Jackson and learned that Holland had returned to the home. She heard Holland yell "Tiera, help me." Price then ran into the house to help her cousin. Ringing the doorbell, she pushed Jackson aside and ran up the stairs to find Holland, but could not find her. When police arrived, Price told them her cousin was upstairs. Police then moved to the house to free Holland and arrest Jackson.
 {¶ 7} When Jackson went downstairs to answer the door, Holland jumped up, ran to the front porch, climbed over the outside bannister, and jumped from the second floor to the ground fracturing her ankle in three places. Jackson refused to leave his house and the SWAT team arrived and arrested Jackson after a short standoff.
 {¶ 8} In his defense, Jackson presented the testimony of his mother, Gloria Hammond, who testified that the property had holes in the walls when she rented it.
 {¶ 9} After deliberation, the jury returned verdicts finding Jackson not guilty of attempted murder but guilty on all other charges.
 {¶ 10} Jackson appeals and has presented nine assignments of error. The first states:
 {¶ 11} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT FAILED TO INSTRUCT THE JURY AS TO DEFENDANT'S PRIVILEGE TO DISCHARGE A FIREARM IN HIS OWN DWELLING."
 {¶ 12} Jackson contends the court failed to instruct the jury as to his privilege to discharge a firearm in his own dwelling. The state argues that R.C. 2923.161 provides a privilege, but that the privilege does not include the discharge of a firearm at another person.
 {¶ 13} Here, the court instructed the jury as follows:
 {¶ 14} "Now, the defendant is charged with improperly discharging a firearm at or into a habitation or school. Before you can find the defendant guilty, you must find beyond reasonable doubt that on or about the 16th day of August, 2001, * * * the defendant, without privilege to do so, knowingly discharged a firearm at or into an occupied structure that is a permanent or temporary habitation."
 {¶ 15} The trial court's instruction regarding improperly discharging a firearm into a habitation does properly state Jackson's right of privilege. This assignment of error is without merit and therefore Jackson's first assignment of error is overruled.
 {¶ 16} The second assignment of error states:
 {¶ 17} "DEFENDANT WAS DENIED DUE PROCESS AND HIS RIGHT TO PREPARE HIS DEFENSE WHEN THE STATE OF OHIO DID NOT PROVIDE DISCOVERY TO DEFENSE COUNSEL UNTIL THE DAY OF TRIAL."
 {¶ 18} Jackson posits that the court erred in allowing the state to present witness testimony when it did not produce the witness list or the medical report of Holland until the day of trial. The state does not dispute that it produced a written witness list on the day of trial, but maintains that Jackson had orally received its witness list. It also asserts that the hospital caused the delay in producing the medical report.
 {¶ 19} It is within a trial court's discretion to decide which sanction to impose for a violation of Crim.R. 16. State v. Apanovitch
(1987), 33 Ohio St.3d 19. When a party fails to comply with a discovery request, Crim.R. 16(E)(3) provides that:
 {¶ 20} "The court may order such party to permit the discovery or inspection, grant a continuance, or prohibit the party from introducing in evidence the material not disclosed, or it may make such other order as it deems just under the circumstances."
 {¶ 21} An appellate court reviewing the trial court's admission or exclusion of evidence must limit its review to whether the lower court abused its discretion. State v. Finnerty (1989), 45 Ohio St.3d 104, 107. Here, the issue for us to consider is whether Jackson was denied due process by the late disclosure of witnesses and the disclosure of the medical report on time.
 {¶ 22} A review of the transcript shows that the state did in fact produce the written witness list on the day of trial. The court addressed the issue and noted that Jackson had been told the state's witnesses and that they were obvious to both sides. The state never offered the medical report into evidence, and Jackson did not demonstrate any prejudice from it as he knew Holland jumped from the second floor porch and required medical attention due to her fall. The trial court did not err in denying Jackson's motion to suppress the state's witness testimony. This assignment of error is overruled.
 {¶ 23} The third assignment of error states:
 {¶ 24} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT DEFINE SERIOUS PHYSICAL HARM TO THE JURY."
 {¶ 25} Jackson contends the trial court erred in failing to instruct the jury on the definition of serious physical harm concerning the felonious assault charge. The state argues that Jackson waived this argument as Jackson did not object at trial.
 {¶ 26} A review of the record reveals, however, that the trial court did instruct the jury on serious physical harm as follows:
 {¶ 27} "Serious physical harm. Serious physical harm to persons means any of the following:
 {¶ 28} "One, any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 29} "Two, any physical harm which carries a substantial risk of death;
 {¶ 30} "Three, any physical harm which involves some permanent incapacity whether partial or total, or which involves some temporary, substantial incapacity;
 {¶ 31} "Four, any physical harm which involves some permanent disfigurement or which involves some temporary, serious disfigurement;
 {¶ 32} "Five, any physical harm which involves acute pain of such duration as to result in substantial suffering or which involves any degree of prolonged or intractable pain."
 {¶ 33} Accordingly, the court did not err in failing to instruct the jury. This assignment of error is without merit and is overruled.
 {¶ 34} The fourth assignment of error states:
 {¶ 35} "DEFENDANT WAS DENIED DUE PROCESS WHEN THE COURT DILUTED THE REQUIREMENT OF PURPOSE IN ITS JURY INSTRUCTIONS."
 {¶ 36} Jackson asserts the court erred in its instructions on purpose, claiming the use of the word "gist" negates the instruction by diluting the requirement of purpose. The state again argues that Jackson has waived any argument because he failed to object at trial.
 {¶ 37} In reviewing jury instructions upon appeal, we must examine the specific charge at issue in the context of the entire charge, not in isolation. State v. Thompson (1987), 33 Ohio St.3d 1, 13. Jury instructions are within the trial court's discretion, which we will not disturb absent an abuse of that discretion. State v. Guster (1981),66 Ohio St.2d 266, 271. Jackson bases his "gist" argument on the holding in State v. Wilson, (1996), 74 Ohio St.3d 381, where the court held:
 {¶ 38} "Admittedly, the `gist of the offense' language is confusing in a murder prosecution which requires `purpose.' In the context of all the instructions given the jury, the court provided adequate instructions on the element of specific intent to kill. Given the evidence, including Wilson's confession, the jury could not have based its decision on the `gist of the offense' language. No `outcome-determinative' plain error occurred. We, therefore, reject proposition of law nineteen." (Citations omitted).
 {¶ 39} Although the Wilson court found the "gist of the offense" language confusing, it found that in the context of all the instructions given to the jury, the instructions were adequate on the element of specific intent to kill. Wilson at 393.
 {¶ 40} A review of the record reveals the following instruction given by the court:
 {¶ 41} "A person acts purposely when it is his specific intention to cause a certain result, or when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in the conduct of that nature.
 {¶ 42} "When the central idea, essence or gist of the offense is a prohibition against or forbidding of conduct of a certain nature, a person acts purposely if his specific intention was to engage in conduct of that nature, regardless of what he may have intended to accomplish by his conduct.
 {¶ 43} "Purpose is a decision of the mind to do an act with a conscious objective of producing a specific result or engaging in specific conduct. To do an act purposely is to do it intentionally and not accidentally. Purpose and intent mean the same thing. The purpose with which a person does an act is known only to himself, unless he expresses it to others or indicates it by his conduct.
 {¶ 44} "How determined. The purpose with which a person does an act or brings about a result is determined from the manner in which it is done, the means in which it is done, the means or weapon used, and all the other facts and circumstances in evidence."
 {¶ 45} The record also reveals that prior to using the language at issue, the trial court instructed the jury on the definition of "kidnaping" as contained in R.C. 2905.01. Immediately following this definition, the trial court defined the culpable mental state of "purposely" as contained in R.C. 2901.22(A). A review of all the jury instructions indicates the court correctly instructed on the essential element of "purpose." Therefore this assignment is overruled.
 {¶ 46} The fifth assignment of error states:
 {¶ 47} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DID NOT INSTRUCT ON AN INTERVENING CAUSE."
 {¶ 48} Jackson argues that the court should have instructed the jury on intervening cause relating to the reason Holland jumped from the front porch of his home, asserting he did not order her to jump or push her. The state again argues that Jackson's argument is waived because he failed to object at trial.
 {¶ 49} A "criminal defendant is entitled to have the trial court give complete and accurate jury instructions on all the issues raised by the evidence." State v. Sneed (1990), 63 Ohio St.3d 3, 9. A requested jury instruction should ordinarily be given if it is a correct statement of law applicable to the facts in the case and it is not covered by the general charge. Id. However, the trial court is not required to give a proposed jury instruction in the exact language requested by its proponent, even if it properly states an applicable rule of law, so long as the substance of the request is included in the instructions which are given. Id. Moreover, a court's failure to give a specific instruction is reversible error only if the trial court abused its discretion. State v.Wolons (1989), 44 Ohio St.3d 64.
 {¶ 50} A review of the record reveals that Jackson did not request an instruction on intervening cause, nor did he object to the failure to include that instruction at trial, and at a sidebar conference the court asked for additions or deletions to the charge but the defense expressed its satisfaction.
 {¶ 51} Crim.R. 30 precludes a party from assigning as error the failure to give jury instructions unless a timely objection has been made in the trial court. Jackson did not do that in this case.
{¶ 52 We thus review this claim for plain error only. Here, the evidence revealed that Jackson forced Holland into his home at gunpoint, forced her to sit on the floor, discharged his weapon in her presence, and shot at her while she used the lavatory, narrowly missing her in the head. His argument that she jumped off the front porch of his home of her own volition, thus requesting a charge of intervening cause is, therefore, not supported by the evidence presented at trial. Accordingly this assignment of error is not well taken and is overruled.
 {¶ 53} The sixth assignment of error states:
 {¶ 54} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN IT ALLOWED DEFENDANT TO BE CONVICTED OF CAUSING SERIOUS PHYSICAL HARM TO BRIANA HOLLAND WHEN THERE WAS NO EVIDENCE THAT DEFENDANT CAUSED THE SERIOUS PHYSICAL HARM."
 {¶ 55} Jackson contends the state's evidence is insufficient to establish his actions caused Holland to jump from his front porch. The state disagrees.
 {¶ 56} As to the claim of insufficient evidence, Crim.R. 29(A) states, in relevant part:
 {¶ 57} "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 58} The test for sufficiency raises a question of law to be decided by the court before the jury may receive and consider the claimed offense. In State v. Martin (1983), 20 Ohio App.3d 172, the court summarizes the standard of review for an insufficiency claim:
 {¶ 59} * * * [T]he test is whether after viewing the probative evidence and inferences reasonably drawn therefrom in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the offense beyond a reasonable doubt. The claim of insufficient evidence invokes an inquiry about due process. It raises a question of law, the resolution of which does not allow the court to weigh the evidence." (Citations omitted.)
 {¶ 60} An accused is presumed to intend the natural, reasonable, and probable consequences of his acts. State v. Carter (1992),64 Ohio St.3d 218, 226. One consequence of holding an individual at gunpoint is escape. Here, the jury properly considered Holland's injuries, sustained while escaping from Jackson's home. Thus, there is sufficient evidence that Holland sustained injuries while escaping from Jackson's home and that she suffered serious physical harm. This assignment is not well taken and is overruled.
 {¶ 61} The seventh assignment of error states:
 {¶ 62} "DEFENDANT WAS DENIED DUE PROCESS OF LAW AND HIS FIFTH AMENDMENT RIGHT NOT TO BE SENTENCED TO MULTIPLE PUNISHMENTS FOR THE SAME CONDUCT WHEN HE WAS SENTENCED SEPARATELY OF ACTS THAT OCCURRED AS PART OF A SINGLE COURSE OF CONDUCT."
 {¶ 63} Jackson argues that the court erred in sentencing him for both the kidnaping and the felonious assault of Briana Holland, contending that in accordance with State v. Logan (1979),60 Ohio St.2d 126, his kidnaping conviction should be reversed because there was no separate animus sufficient to sustain the charge. The state argues the court correctly sentenced him because these are different offenses and a separate animus exists for each. Logan held:
 {¶ 64} "In establishing whether kidnaping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
 {¶ 65} "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 {¶ 66} "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."
 {¶ 67} The guidelines set forth in Logan establish that a separate offense of kidnaping can occur if there is a prolonged restraint, a secretive confinement, or substantial movement of the victim. The offense can also occur if the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime. See, also, State v. Simko (1994),71 Ohio St.3d 483, 488, citing Logan, 60 Ohio St.2d at 135, ("the test to determine whether the kidnaping was committed with a separate animus and thus amounts to a separate offense is `whether the restraint or movement of the victim is merely incidental to a separate underlying crime, or instead, whether it has a significance independent of the other offense'").
 {¶ 68} Applying Logan, the record supports the jury's finding that Jackson kidnaped Holland. He charged her, grabbed her from behind and put his gun in her back, forcibly leading her back into his house, up the stairs, and finally forcing her to sit on the bare floor. These actions constitute the crime of kidnaping in that he forcibly removed her from the place he found her and deprived her of her liberty for the purpose of terrorizing her. Thereafter, he began discharging his weapon and a bullet almost struck her in the head, causing her to jump from the second floor porch. In addition, the evidence indicates he knowingly attempted to cause physical harm to her by means of a deadly weapon. Jackson committed these offenses, with a separate animus toward each.
 {¶ 69} This assignment of error is therefore not well taken, and is overruled.
 {¶ 70} The eighth assignment of error states:
 {¶ 71} "DEFENDANT WAS DENIED DUE PROCESS OF LAW AND SUBJECTED TO A CRUEL AND UNUSUAL PUNISHMENT WHEN THE COURT IMMEDIATELY IMPOSED CONSECUTIVE SENTENCES."
 {¶ 72} Jackson argues that the court erred in imposing consecutive sentences when it made a "rote" statement that "tracked the statutory language." The state argues the court does not need to use the exact words of the statute.
 {¶ 73} When a court imposes consecutive sentences, it must look to R.C. 2929.14(E)(4) and R.C. 2929.19(B)(2). R.C. 2929.14(E)(4) sets forth the factors for imposition of consecutive or multiple prison terms and provides:
 {¶ 74} "If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public * * *."
 {¶ 75} Further, the trial court is required to find that the offender's behavior fits into one of the categories listed in R.C.2929.14(E)(4)(a), (b), or (c), that the offenses had been committed
 {¶ 76} awaiting trial or sentence, or the harm caused is so great that no single term adequately reflects the seriousness of the offender's conduct or that consecutive sentences are necessary to protect the public from future crime. In addition, the trial court must give its reason for imposing consecutive sentences. See R.C. 2929.19(B)(2).
 {¶ 77} Thus, a court may impose consecutive sentences only if it finds that the consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that the consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; also the court must make additional findings, as outlined above.
 {¶ 78} The court at sentencing made these statements:
 {¶ 79} "Well, Anthony, let me get into your mind a little bit. I mean, what's going on with you? Now, you were put on probation last year in a serious case. I gave you a big break, and you repaid it by going crazy in August, 2001 with these girls that testified. * * * Well, you had a 15 year old in your house. * * * Just a minute. What did you think you were doing with her. * * * She looks about twelve years old, looking at her. I mean, what did you think she was, 25? * * * Well, Anthony, you're just out of control. * * * You got guns in your place, you're shooting up houses, what do you think you're doing? * * * So she jumped off the porch because she felt like jumping down from a second story house? * * * Well, you heard her testimony. She thought you were going to kill her."
 {¶ 80} The court further stated:
 {¶ 81} "Well Anthony, I don't know where your mind is, but obviously it's not going in the proper direction. The court makes a finding that you're a threat to the community. Consecutive sentences are necessary to protect the public from future crimes and to punish the offender. The sentences are not disproportionate to the seriousness of the conduct and the danger posed to the public, and the harm caused by the offenses were so great, no single prison term would be an adequate response."
 {¶ 82} The record does not support Jackson's claim that the trial court failed to articulate the necessary findings to impose consecutive sentences. The court gave reasons for imposing consecutive sentences and found necessity to protect the public from future crimes which it believed Jackson would commit, and when it determined that no leniency could be granted, it thereby determined its sentences are not disproportionate to the seriousness of his conduct and the danger he posed to the victim, her family, and the public. Accordingly, the trial court properly imposed consecutive sentences. This assignment is overruled.
 {¶ 83} The ninth assignment of error states:
 {¶ 84} "DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL AS TO THE OFFENSE OF DISCHARGING A FIREARM INTO A HABITATION OR SCHOOL."
 {¶ 85} Jackson argues that the court should have acquitted him of the firearm charge because he fired his gun inside his own home and the court should have instructed the jury that he is privileged to shoot a firearm in his own home in accordance with R.C. 2923.162.
 {¶ 86} R.C. 2923.162(B)(4) provides that the prohibition against discharging a firearm does not apply to one who owns any type of property and who, while on that enclave, discharges a firearm.
 {¶ 87} Jackson misreads this code section. Initially, we note, he lived with his mother who rented the Eddy Road premises, he did not own it and this "privilege" does not apply to him.
 {¶ 88} Here, the state assumed the burden to prove that Jackson, without privilege to do so, discharged a firearm at or into an occupied structure that is a permanent habitation of an individual. He did, the state proved this through Holland, and the court properly overturned his motion for acquittal.
 {¶ 89} This assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TIMOTHY E. McMONAGLE, A.J., and FRANK D. CELEBREZZE, JR., J., CONCUR.